Opinion issued March 25, 2004











In The
Court of Appeals
For The
First District of Texas




NO. 01-02-01069-CR
NO. 01-02-01070-CR




 ROBERT SOLIS, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 338th District Court
 Harris County, Texas
Trial Court Cause Nos. 906939 & 906940












MEMORANDUM OPINION

          A jury convicted appellant, Robert Solis, of aggravated assault


 and aggravated
kidnapping.


 See Tex. Pen. Code Ann. §§ 22.02, 20.04 (Vernon 2003). After
finding that appellant had voluntarily released his child in a safe place, the jury
assessed appellant’s punishment at 20 years’ confinement for each offense, the
sentences to run concurrently. See id. § 20.04(d) (stating that, if defendant proves
that he released his victim in safe place, the offense is second-degree felony, rather
than first-degree felony).
          We determine (1) whether the evidence is legally and factually sufficient to
support appellant’s conviction for aggravated kidnapping and (2) whether the trial
court erred by denying appellant’s request to instruct the jury on the use of deadly
force to protect a third person’s property. We affirm.
Facts
          On the morning of February 11, 2002, Harry Hill and his girlfriend, Andrea
Aguilar, had an argument at Aguilar’s apartment. At that time, both Hill and Aguilar
were living in the apartment, although the lease was in Aguilar’s name only. After
the argument, Aguilar left the apartment and drove to appellant’s house. When
Aguilar arrived, appellant noticed that she had scratches on her face and that she had
been crying. When Aguilar informed appellant that Hill had hit her, appellant
grabbed a gun from a closet and took Aguilar’s car back to her apartment to find Hill.
          A few minutes later, appellant arrived at Aguilar’s apartment and found that
Hill had deadbolted the door. Hill walked out onto the balcony to see who was at the
door. Appellant told him to come outside because they needed to settle something. 
By the time that Hill got outside, appellant had gone back down the steps to the
apartment. Hill rushed down the steps toward appellant and saw that appellant had
a gun. Hill turned to run back up the stairs, and appellant shot him in the back of the
leg.
          After the shooting, appellant went back to his house and told Aguilar to go
back to the apartment and to give the police appellant’s address, indicating that
appellant intended to surrender to the police at his house. When the police arrived
at appellant’s house, they were under the impression that appellant was going to
surrender, but appellant did not allow the police to approach him. Appellant sat in
a chair in the garage with the door open, holding a gun in one hand and his four-year-old son in the other. Appellant never pointed his gun at anyone, but he refused to
surrender, and he kept his son on his lap. Appellant eventually closed himself and his
son inside the garage. Appellant surrendered and released his son approximately an
hour after the police had arrived and after a SWAT team was in the process of
breaking into appellant’s garage by force. Legal and Factual Sufficiency
          The standard of review for legal sufficiency requires us to view the evidence
in the light most favorable to the conviction and to determine whether any rational
trier of fact could have found the essential elements of the crime beyond a reasonable
doubt. Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). This standard
“gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the
testimony, to weigh the evidence, and to draw reasonable inferences from basic facts
to ultimate facts.” Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789
(1979). The standard of review for factual sufficiency is whether a neutral review of
all the evidence, both for and against the finding, demonstrates that the proof of guilt
is so obviously weak, or so contrary to the overwhelming preponderance of the
evidence, as to undermine confidence in the jury’s determination of guilt. King v.
State, 29 S.W.3d 556, 563 (Tex. Crim. App. 2000). 
A. Legal Sufficiency
          In his first point of error, appellant asserts that the evidence is legally
insufficient to support his conviction for aggravated kidnapping in cause number
906940 because there was no evidence that appellant restricted his son’s movement
without his son’s consent. 
          For the purposes of this case, the pertinent definition of aggravated kidnapping
is intentionally or knowingly to abduct a person with intent to use him as a shield or
hostage or to exhibit a deadly weapon during the commission of the kidnapping. See
Tex. Pen. Code Ann. § 20.04(a)(2), (b) (Vernon 2003). “Abduct” is defined as
restraining a person with intent to prevent his liberation by using or threatening to use
deadly force. Id. § 20.01(2)(B) (Vernon 2003). “Restrain” means to “restrict a
person’s movements without consent, so as to interfere substantially with the person’s
liberty, by moving the person from one place to another or by confining the person. 
Restraint is ‘without consent’ if it is accomplished by force, intimidation, or
deception.” Id. § 20.01(1)(A).
          There is no dispute that appellant exhibited a deadly weapon, a gun, when the
police arrived at his home and that appellant’s son was present the entire time that the
police attempted to take appellant into custody. The officers’ testimony established
that appellant held his son in one hand and held a gun in the other hand from the time
that the police arrived until just before appellant surrendered. Appellant also held his
son in front of him and ducked down when the officers pointed their weapons at
appellant. One officer testified that appellant was not going to put down either the
gun or the child until appellant talked to a certain secret service agent. Based on
appellant’s holding a deadly weapon and placing his son between himself and the
officers’ weapons for approximately one hour, the jurors could reasonably have
inferred that appellant intended to restrain his son by force to protect himself from
arrest. See Jackson, 443 U.S. at 319, 99 S. Ct. at 2789 (asserting that jurors may draw
reasonable inferences from basic facts to find ultimate facts). 
          Additionally, appellant asserts that he was somehow justified in holding his son
on his lap because he is the child’s parent and because the child wanted to be there. 
It is immaterial whether appellant’s son consented to stay with his father during the
encounter because the child was only four years old. As appellant concedes in his
brief, a child under 14 cannot consent to “restraint” without a parent’s acquiescence. 
See Tex. Pen. Code Ann. § 20.01(1)(B)(i). Under the kidnapping statute, it is an
affirmative defense that, among other things, the actor was a relative of the person
abducted. See Tex. Pen. Code Ann. § 20.03(b)(2) (Vernon 2003). However, this
affirmative defense is not permitted for aggravated kidnapping. See id. § 20.04. 
Therefore, even though appellant is the father of the child, appellant cannot use his
son as a shield. Accordingly, when viewed in the light most favorable to the verdict,
the evidence was legally sufficient to support appellant’s conviction for aggravated
kidnapping.
B.      Factual Sufficiency
          Also under his first point of error, appellant asserts that the evidence is
factually insufficient to prove that he held his son without his son’s consent. 
Appellant points to his testimony and the officers’ testimony to show that the
evidence is insufficient to prove that he committed aggravated kidnapping. Two
officers testified that appellant never pointed the gun at the child or threatened to hurt
the child in any way. One of the officers also testified that he never saw the child
crying. Appellant testified that his son was on his lap because he wanted to sit with
his dad and that appellant put his son down behind him before he went into the garage
and shut the door. Aguilar testified that, at some point, appellant stood up from his
chair in the garage and put his son down.
          However, the officers also testified that appellant never let go of the gun or his
son until just before he was arrested. One officer testified that appellant was holding
his son around the midsection and that appellant lifted his son and ducked when the
officer pointed his rifle at appellant. The officer stated that he was unable to use his
weapon at any time because the child was always there.
          It is well settled that the jury is the sole judge of the weight and credibility of
witness testimony. Johnson, 23 S.W.3d at 7. Consequently, the jury was entitled to
believe the officers’ testimony that appellant used his son as a shield and to disbelieve
the testimony of the defense witnesses that appellant’s son was merely staying near
appellant because he wanted to be with his father. Accordingly, we hold that the
evidence was not so weak or so overwhelmingly in favor of appellant that the jury’s
verdict was manifestly wrong and unjust.
          We overrule appellant’s first point of error. Defense of Property
          In his second point of error, appellant contends that the trial court erred by
denying his request for a jury instruction on the use of deadly force to defend another
person’s property. See Tex. Pen. Code Ann. § 9.43 (Vernon 2003) (defining
circumstances under which person is justified in using deadly force to protect
property of another). This point of error applies only to appellant’s conviction for
aggravated assault in cause number 906939.
          Assuming, without deciding, that the trial court did commit error in denying
appellant’s request for an instruction on defense of property, appellant must still show 
that the error was harmful. See Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim.
App. 1984). Appellant timely objected to the trial court’s denial of the instruction at
trial. See Tex. Code Crim. Proc. Ann. art 36.19 (Vernon 1981) (stating that “[a]ll
objections to the charge . . . shall be made at the time of the trial.”). As a result, the
denial of the instruction to the jury is reversible error if it was not harmless. Almanza,
686 S.W.2d at 171. This means that any actual harm, regardless of degree, is
sufficient to require reversal. Hutch v. State, 922 S.W.2d 166, 171 (Tex. Crim. App.
1996). To determine whether there is any harm, we examine the entire jury charge;
the state of the evidence, including the contested issues and the weight of probative
evidence; counsels’ argument; and any other relevant information revealed by the
record of the trial as a whole. Almanza, 686 S.W.2d at 171.
          We now examine appellant’s version of the incident to begin the harm analysis. 
Appellant testified that Aguilar had instructed him to go to her apartment and to make
sure that Hill did not take her property from the apartment. When appellant arrived
on the street outside of Aguilar’s apartment, he observed Hill “moving stuff from the
house to his truck.” Appellant believed that Hill was not supposed to be there. When
appellant approached the stairs to the apartment, Hill was standing near the
apartment’s balcony, and appellant waved for Hill to come down. At that point, Hill
quickly opened the door to the apartment and rushed down the steps toward appellant. 
Appellant believed that Hill had a weapon. Hill’s aggressive movement scared
appellant, and appellant pulled out his gun and fired a warning shot. Hill then
dropped a knife and, when he turned to pick it up, appellant shot him in the back of
the leg. 
 
          Appellant asserts that this evidence raises the defense of protection of a third
person’s property. See Tex. Pen. Code Ann. § 9.43 (stating that person is justified
in using deadly force to protect third person’s property if, among other things, “the
actor reasonably believes that the third person has requested his protection of the land
or property.”).
          Appellant requested that a jury instruction be given regarding the use of deadly
force to protect property. The trial court denied appellant’s request. The statute
regarding the use of deadly force to protect property states that a person is justified
in using deadly force to protect property: 
(1) if he would be justified in using force against the other under
Section 9.41[justifying the use of force against another when the
actor reasonably believes force is immediately necessary to
prevent or terminate the other’s trespass on the land or unlawful
interference with the property]; and
 
          (2)     when and to the degree he reasonably believes the deadly force is
immediately necessary:
(A)to prevent the other’s imminent commission of
arson, burglary, robbery, aggravated robbery, theft
during the nighttime, or criminal mischief during the
nighttime; or
(B)to prevent the other who is fleeing immediately after
committing burglary, robbery, aggravated robbery,
or theft during the nighttime from escaping with the
property; and
 
          (3)     he reasonably believes that:
(A)the land or property cannot be protected or
recovered by any other means; or
(B)the use of force other than deadly force to protect or
recover the land or property would expose the actor
or another to a substantial risk of death or serious
bodily injury.

Tex. Pen. Code Ann. § 9.42 (Vernon 2003). 
          Under appellant’s version of the facts, Hill was inside the apartment when
appellant arrived, and appellant waved for him to come down. At that point,
appellant contends that Hill rushed at him with a weapon. Appellant testified that he
shot Hill because he had feared for his life and that he had not had time to take any
other action to avoid the imminent attack. As a result, appellant asserts that his
actions fulfilled the requirements for use of deadly force to protect a third person’s
property because the use of any other force would have exposed him to a substantial
risk of death or serious bodily injury. See id. § 9.42(3)(B). 
          However, the self-defense instruction that was submitted to the jury provided
that appellant’s actions were justified if “[appellant] reasonably believe[d] that such
deadly force [was] immediately necessary to protect himself against the other
person’s use or attempted use of unlawful force, and if a reasonable person in
[appellant’s] situation would not have retreated.” Therefore, according to appellant’s
version of the incident, both the statute regarding self-defense and the statute
regarding protection of a third person’s property provided appellant with the same
justification for having used deadly force—to protect himself from Hill, who had
been coming at him with a knife. Consequently, any error that the trial court
committed in denying appellant’s request for an instruction on the protection of a
third person’s property was harmless because the jury could not have found a
different justification for appellant’s use of deadly force even if it had been instructed
on both self-defense and protection of a third person’s property. In other words, the
instruction on protection of a third person’s property would have afforded appellant
no greater advantage than did the self-defense instruction that was given.


 Under
these circumstances, appellant has not shown any actual harm in the trial court’s
refusal to give an instruction on protection of a third person’s property.
          We overrule appellant’s second point of error.         
 
 
 
 
 
 
 
Conclusion
          We affirm the judgment of the trial court.
 
 
                                                             Tim Taft
                                                             Justice
Panel consists of Justices Taft, Hanks, and Higley.
Do not publish. See Tex. R. App. P. 47.2(b).