COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

DENNIS EARL PICKENS,                                  )

                                                                              )              
No.  08-02-00164-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )               
195th District Court

THE STATE OF TEXAS,                                     )

                                                                              )            
of Dallas County, Texas

Appellee.                           )

                                                                              )              
(TC# F-0153824-HN)

                                                                              )

 

 

OPINION  ON 
REMAND

 

Dennis Earl
Pickens was convicted by a jury of possession of heroin and assessed punishment
at 25 years=
imprisonment.  On July 15, 2004, this
Court affirmed Appellant=s
conviction.  Pickens v. State, No.
08-02-00164-CR, 2004 WL 1576783 (Tex.App.--El Paso July 15, 2004, pet.
granted)(not designated for publication). 
Appellant filed a petition for discretionary review, which was granted
by the Court of Criminal Appeals.  On
June 22, 2005, the Court of Criminal Appeals issued an opinion, which affirmed
in part and reversed in part our prior decision.  See Pickens v. State, 165 S.W.3d 675
(Tex.Crim.App. 2005).  The Court of
Criminal Appeals remanded the case to this Court for further analysis on
Appellant=s second
issue, in which he complained of jury charge error by failure to include an
instruction pursuant to Article 38.23.  Id.
at 680-81. 








In our prior
opinion, this Court summarized the facts as follows:

On June 19, 2001,
the Dallas Police Department received several citizen=s
complaints about illegal drug sales at a car wash in the 2400 block of Starks
in South Dallas.  Officers Thomas
Peterson and Scott Sayers were working on special assignment in the area and
were dispatched to investigate the drug complaints.  Officer Peterson conducted field surveillance
on foot some distance from the scene while his partner stayed in the patrol car
at another location.  Officer Peterson
concealed himself behind some cut tree limbs in the backyard of a nearby
residence and observed the activities at the car wash with a pair of
binoculars.

From the hidden
location, which was about fifteen to twenty yards away from the car wash, Officer
Peterson observed Appellant standing out in the parking lot, engaging in what
appeared to be a hand‑to‑hand drug transaction with personal
property exchanged for something Officer Peterson could not see.  The officer then saw Appellant walk over to a
vehicle, get into the driver=s
seat, and lean the seat back.  Appellant
was the only passenger in the vehicle and he kept the door of the vehicle
open.  An unknown individual then
approached the vehicle and handed Appellant money.  Officer Peterson observed Appellant lift up
the plastic cup holder console and remove a clear plastic baggie which
contained several capsules.  Appellant
shook a few of the capsules into the palm of his hand and the unknown
individual removed several capsules and left. 
In a period of ten to fifteen minutes, Officer Peterson observed two
other similar hand‑to‑hand transactions.  Based on previous experience, Officer
Peterson knew from the packaging that such capsules typically contain powdered
heroin and powdered cocaine.








After witnessing
what he believed to be a felony in progress, Officer Peterson radioed Officer
Sayers a description of Appellant and told him to get backup.  Officer Sayers later radioed and told Officer
Peterson that he was en route to detain Appellant until backup arrived.  Officer Peterson then observed Officer Sayers
approach Appellant and ask him to exit the vehicle.  Officer Sayers testified that when he
approached the vehicle, Appellant was sitting on the driver=s side with his legs hanging out of the
vehicle and the door open.  When
Appellant exited the vehicle, Officer Sayers frisked him for weapons.  Appellant was taken into custody and backup
officers at the scene conducted an inventory search of the vehicle prior to
having it towed to the city pound.

The officers
recovered from the vehicle a plastic bag with white and brown pills from
underneath the cup holder and discovered additional drugs in the glove
box.  The drugs tested positive for
cocaine and heroin.  The drug analysis
report showed the drugs recovered were controlled substances, which consisted
of 59 capsules of brown powder, containing heroin and weighing 9.9 grams, and
31 half‑pink capsules, containing cocaine and weighing 2.2 grams. Money
inside an organizer, totaling $540, was also seized from inside the vehicle.

Appellant
testified that in the morning on the day he was arrested, he called a wrecker
to pick up his car and take it to a mechanic's garage for wiring repair.  Appellant led the tow truck driver to the
garage in another vehicle he had purchased the day before.  After leaving the garage, Appellant planned
to take the vehicle he was driving back to the seller for brake work.  Appellant arranged for an acquaintance, Wayne
Pratt, to follow him to the seller=s
business, so he could drop the vehicle off and not have to sit around and wait
for the repairs to be done.  Appellant
left with Mr. Pratt and another person named Charles Frazier.  Mr. Pratt was driving them around, making
stops on their way back to South Dallas. 
At the intersection of Starks and Bexar, Mr. Pratt pulled into a
car wash and Appellant got out of the vehicle to talk with a friend.








Appellant was
talking with his friend when Officers Peterson and Sayers pulled into the car
wash and parked by a dryer.  People
started running away.  The officers left
and went to another building down the street. 
Appellant continued talking with friends.  Officer Sayers then returned to the car wash
by himself.  Officer Sayers pointed at
Appellant, who was standing by a Suburban van, called him over and asked him
what he was doing.  The officer told
Appellant to stand at the back of the vehicle that Mr. Pratt had been
driving.  Officer Sayers got into the car
and started to look around for a few seconds. 
The officer then exited and told Appellant to go stand at the front of
the vehicle.  Officer Sayers then
handcuffed Appellant and escorted him to the patrol car.

Appellant
testified that the vehicle the police searched that day was not his. Appellant
explained that his organizer was on top of the vehicle.  The cash in his organizer was money he earned
by driving around a handicapped woman. 
Appellant denied possessing the heroin and cocaine.  The vehicle was registered to someone named
Pamela Jean Conley who lived at 4927 Bonnie View.  Appellant admitted that he lived at that
address prior to his incarceration, but did not know the individual listed as
the owner.  Appellant knew nothing about
the drugs found in the vehicle.

On original
submission, Appellant complained that the trial court erred by failing to
include an Article 38.23 instruction. 
The Court of Criminal Appeals has remanded this case to us to determine
under the appropriate jury charge error analysis if there was a factual dispute
warranting an Article 38.23 instruction, and if so, error which would be
subject to a harm analysis.








When an appellant
alleges jury charge error on appeal, our first task is to determine whether
error actually exists in the charge.  Hutch
v. State, 922 S.W.2d 166, 170 (Tex.Crim.App. 1996); Almanza v. State,
686 S.W.2d 157, 171 (Tex.Crim.App. 1984). 
If there is jury charge error, we must then determine if the error
caused sufficient harm to warrant reversal. 
Hutch, 922 S.W.2d at 170-71; Almanza, 686 S.W.2d at
171.  Preservation of charge error does
not become an issue until we assess harm. 
Ngo v. State, 175 S.W.3d 738, 743 (Tex.Crim.App. 2005).  The degree of harm necessary for reversal
depends on whether the appellant preserved the error by objection.  Id. 
When the defendant fails to object or states that he has no objection to
the charge, we will not reverse for jury‑charge error unless the record
shows Aegregious
harm@ to the
defendant.  Id. at 743-44; Almanza,
686 S.W.2d at 171.

Article 38.23
provides that no evidence obtained by an officer or other person in violation
of the laws or constitutions of Texas or the United States shall be admitted in
evidence against the accused on the trial of any criminal case.  See Tex.Code
Crim.Proc.Ann. art. 38.23 (Vernon 2005). 
It also provides that where the legal evidence raises such an issue, the
jury shall be instructed that if it believes, or has a reasonable doubt, that
the evidence was obtained by such a violation, then it shall disregard any such
evidence.  Id.  An Article 38.23 instruction must be included
in the jury charge only if there is a factual dispute about how the evidence
was obtained. Garza v. State, 126 S.W.3d 79, 85 (Tex.Crim.App.
2004).  A fact issue concerning whether
the evidence was legally obtained may be raised A>from any source, and the evidence
may be strong, weak, contradicted, unimpeached, or unbelievable.=@  Id. 
If a defendant successfully raises a factual dispute over whether
evidence was illegally obtained, inclusion of a properly worded Article 38.23
instruction is mandatory.  Bell v.
State, 938 S.W.2d 35, 48 (Tex.Crim.App. 1996).








Here, Appellant
asserts that his testimony shows that while he and his companions were talking
and washing the car, Officer Sayers without any justification, probable cause,
or reasonable suspicion, simply started searching the car.  According to Appellant, he was drinking beer
and talking with friends at the car wash and never re-entered Mr. Pratt=s vehicle after it was parked.  In contrast, Officer Peterson testified that
he observed a felony in progress, that is, he witnessed Appellant conduct
hand-to-hand drug transactions and enter the vehicle and remove capsules, which
he believed to be narcotics, from a plastic baggie kept in the vehicle=s console.  Based on Officer Peterson=s account, the officers thus had
probable cause to arrest Appellant and conduct a search incident to
arrest.  We conclude the Appellant=s testimony raised a factual dispute as
to how the evidence was obtained, in that if believed, it negated the facts
Officer Peterson had asserted as grounds for probable cause to arrest him and
the validity of the subsequent search.








Because the
evidence raised a factual dispute, the trial court erred in failing to include
an Article 38.23 instruction in the jury charge.  Having found error, we must next determine
whether the error resulted in egregious harm. 
See Hutch, 922 S.W.2d at 171 (egregious harm analysis required
when charging error is not preserved). 
Errors that Aresult in
egregious harm are those which affect >the
very basis of the case,=
deprive the defendant of a >valuable
right,= or >vitally affect a defensive theory.=@  Hutch, 922 S.W.2d at 171, quoting
Almanza, 686 S.W.2d at 172. Reversal is warranted only if the error is so
egregious and created such harm that Appellant did not have a fair and
impartial trial.  Almanza, 686
S.W.2d at 171.  In our analysis, we
assess the degree of harm in light of: 
(1) the entire jury charge; (2) the state of the evidence including
contested issues and the weight of the probative evidence; (3) arguments of
counsel; and (4) any other relevant information revealed by the record of the
trial as a whole.  Hutch, 922
S.W.2d at 171; Almanza, 686 S.W.2d at 171.  Further, the record show must that a
defendant has suffered actual, rather than merely theoretical harm from the
jury instruction error.  Ngo, 175
S.W.3d at 750; Almanza, 686 S.W.2d at 174.

We first consider
the entire jury charge.  The charge
instructed the jury that Appellant was charged with possession of a controlled
substance and that A[u]nless
you so find beyond a reasonable doubt, or if you have a reasonable doubt
thereof, you will acquit the defendant of the charge of possession of a
controlled substance, and so say by your verdict.@  The charge contains general language,
informing the jury that:  (1) the
defendant is presumed innocent; (2) the prosecution has the burden to prove the
defendant guilty by proving every element of the offense beyond a reasonable
doubt; (3) the burden of proof rests on the State throughout the trial and
never shifts to the defendant; and (4) the jury is the exclusive judges of the
facts proved, of the credibility of the witnesses, and the weight of their
testimony.  While the charge was
erroneous by omission of an Article 38.23 instruction, we find that as a whole,
the jury charge did not further compound any harm suffered.








With regard to the
state of the evidence, Appellant=s
testimony created a fact issue as to whether Officer Peterson witnessed
Appellant conducting drug transactions at the car wash.  After reviewing the entire record of the
trial, we conclude that Appellant=s
testimony served primarily to negate his guilt for the offense, thus creating a
contested issue, which was related to the jury charge error.  However, no harm can be shown on this
basis.  Despite the lack of an Article
38.23 instruction, the conflicting testimony which created the factual dispute
was clearly resolved in favor of the State. 
Appellant argues that if the jury determined that the search was illegal,
the State would have had no case because the drugs founds in the car could not
have been considered.  To the contrary,
if the jury believed Appellant=s
testimony that he was just talking and drinking beer, and thus committing no
drug offense at all, then the jury would have discredited Officer Peterson=s testimony that he witnessed Appellant
conducting drug transactions in a vehicle, resulting in a not guilty verdict
because no crime had occurred.  Under the
particular facts of this case, the factual dispute arises from Appellant=s complete denial of wrongdoing.  Thus, if the jury had believed Appellant=s denial, it would have never reached
the issue of the legality of the search incident to his arrest.  We conclude that any showing of harm on this
basis would amount to theoretical, rather than actual harm.

We next consider
the arguments by counsel and other relevant information from the trial
record.  We observe that defense counsel
did not expressly contest the legality of the search in either opening or
closing argument.  Rather, the focus of
the defense theory was on attacking the credibility of the police officers and
their investigative procedures.  In his
brief, Appellant asserts that the State=s
voir dire focused on the legality of arrest, and effectively, the search.  However, Appellant only refers this Court to
the State prosecutor=s
explanation to the jury during voir dire that unlike on television, Miranda
rights are not always read right when someone is arrested.  Appellant also claims that the trial court Awas careful to explain to the jury the
law regarding the legality of the arrest, and effectively, the subsequent
search,@ however,
the record shows the trial court merely explained to the jury that as a general
rule any admission or confession while in custody cannot be used against the
accused unless he has been first apprised of his Miranda rights.  After reviewing the record, we find no
support for Appellant=s
claim that the issue of the legality of the arrest and search was stressed to
the jury by either party during voir dire. 








Appellant also
claims that the State used one of its peremptory challenges on a venire members
because it was concerned that the venire member would Asecond
guess the legality of the arrest@
and that the first trial had ended in a mistrial because one of the jurors had
second-guessed the legality of the actions of the police officers.  We disagree with Appellant=s broad reading of the record in this
regard.  Rather, the record shows that in
providing a race neutral purpose for striking of an African-American venire
member, the State argued that it was striking him because he was a security
guard and that it did not want Asomeone
second-guessing what the police officer does in regard to his profession.@ 
The State then explained that a juror in security in the first trial was
one of the jurors who was not able to come to a verdict, A[s]o the State=s
position is we don=t want
security second-guessing what police officers do during the trial.@ 
We conclude that the record on the peremptory challenges does not
support Appellant=s
egregious harm claim.

After reviewing
the entire record under the appropriate Almanza harm analysis standard,
we find that egregious harm has not occurred in this case.  Accordingly, we overrule Appellant=s second issue, the only issue for
review on remand.

We affirm the
trial court=s
judgment.

 

 

 

March
30, 2006

DAVID WELLINGTON
CHEW, Justice

 

Before Barajas, C.J., McClure, and Chew, JJ.

 

(Do Not Publish)