Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio



★ ★ ★                                ★ ★ ★



# MEMORANDUM OPINION

No. 04-07-00303-CR

Melissa Ann **FULCHER**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 216th Judicial District Court, Bandera County, Texas
Trial Court No. BACR-05-004
Honorable David A. Berchelmann, Jr., Judge Presiding

Opinion by:    Karen Angelini, Justice
Dissenting opinion by: Steven C. Hilbig, Justice

Sitting:        Catherine Stone, Justice
                Karen Angelini, Justice
                Steven C. Hilbig, Justice

Delivered and Filed:   August 6, 2008

AFFIRMED

Appellant, Melissa Ann Fulcher ("Fulcher"), was found guilty of possession of a controlled

substance weighing less than one gram. The trial court assessed punishment at one year's

confinement, fully probated, a $500.00 fine, and court costs. Fulcher's sole point of error is that the

trial court committed reversible error in failing to charge the required culpable mental state in the

jury charge.

**STATEMENT OF FACTS**

At approximately 2:00 a.m. on September 16, 2004, Deputy Amy Price ("Deputy Price") of the Bandera County Sheriff's Department was notified there was an intoxicated driver in a pickup truck in the Bottle Springs Road area. Deputy Price headed towards that area and spotted a pickup truck parked on the rocks close to a low water crossing. Deputy Price turned on her spotlight and observed a woman, later identified as Fulcher, who was alone, crying, waving her arms, and distraught. Deputy Price requested identification and subsequently determined that Fulcher had outstanding warrants in Bexar County. As a result, Fulcher was placed under arrest.

Deputy Price asked Fulcher whether someone could come and take possession of her vehicle but was advised that no one was available to do so. Consequently, Deputy Price, along with Deputy Jeff Horrell ("Deputy Horrell"), began an inventory search of the vehicle in order to impound it. According to Deputy Price, Fulcher, who was seated in the patrol car during the search, became violent as the search ensued and repeatedly asked for her "drink," a Sunkist bottle located in a cup holder in Fulcher's vehicle. During the search, Deputy Horrell discovered an Exacto knife, a red handled knife, and a mirror with a white-power residue on it inside the open glove box.

A canine unit, manned by Deputy Gerald Johnson ("Deputy Johnson"), was then called to assist in the search, and the drug dog alerted to the following items: the Sunkist bottle located in the cup holder; the floorboard; Fulcher's purse; a marijuana joint concealed in the console; a blue canvas bag containing woman's clothing and broken pieces of a lightbulb with burnt residue on them; and an area under the vehicle where a broken light bulb with burn marks on it was found. The only items submitted for further testing were the mirror, the broken lightbulb removed from the blue bag, and the contents of the Sunkist bottle. Both the mirror and the light bulb fragments tested

positive for trace amounts of methamphetamine; however, the contents of the Sunkist bottle tested negative.[1] Fulcher was indicted for possession of a controlled substance and pleaded not guilty.

At trial, Deputy Price testified that, on the night in question, she observed Fulcher's pupils to be very large and that they did not respond well to the light, which she stated was indicative of drug use. Additionally, during the strip search conducted at the jail, Price observed Fulcher to have numerous sores and blisters all over her body, which she also stated was indicative of a methamphetamine user.

Deputy Horrell testified that the mirror, which contained white-powder residue, was found "[i]n the glove box, and [the glove box] was actually open at the time." Upon discovering the mirror and observing the residue, Deputy Horrell removed it from the vehicle; therefore, it was not inside the vehicle when the drug dog alerted on various items in and around Fulcher's vehicle. Deputy Horrell also went on to explain that open glove boxes are commonly used by methamphetamine users to lay the mirror on so that they can chop the crystals. Further, Deputy Horrell testified that the broken pieces of light bulb, which were found inside the blue bag where the drug dog alerted, tested positive for methamphetamine.

Deputy Johnson, the canine handler, testified that he inspected the Sunkist bottle the dog alerted to and detected small specks on the cap, which he field-tested. Johnson sent the bottle to the drug lab for testing. Deputy Johnson further stated that the light bulb fragments found outside the vehicle that the dog alerted to had a black residue on them consistent with the black-burned residue found in methamphetamine pipes. Deputy Johnson explained that a lightbulb is often adapted as a pipe to smoke methamphetamine and that, on the night in question, Fulcher exhibited physical signs of having smoked methamphetamine or crack cocaine.

---

[1]The exterior of the Sunkist bottle was not tested.

Deputy Johnson's suspicions led him to ask Fulcher to stick out her tongue, and when she reluctantly complied, he noted that she had "a real thick white coating across her tongue with blisters," as well as burn marks on her lips. Further, Deputy Johnson observed that Fulcher had sores on her face and arms and that her pupils were dilated. Based on his experience and training, Deputy Johnson testified that this indicated recent drug use and more specifically, the use of methamphetamine or cocaine, as both drugs are melted down and turn into a vapor. Deputy Johnson also testified that along with the other items found, the Exacto knife and red handled knife found in Fulcher's glove box were considered drug paraphernalia.

Joel Budge, an Austin crime lab employee, testified regarding the items sent for testing. Budge indicated that while the contents of the Sunkist bottle tested negative for methamphetamine, he did not test the exterior of the Sunkist bottle, where the drug dog alerted. Budge further testified that the compact mirror and light bulb fragments, identified as State's Exhibit 7, were tested and that both contained a trace amount of methamphetamine. He concluded that Exhibit 7 was the light bulb he tested because it had a strip of paper in the evidence bag marked with the lab's case number and his name.[2]

Fulcher's husband testified that the day before Fulcher's arrest, they drove to Hondo to look at some property Fulcher intended to purchase with money she recently inherited. Mr. Fulcher stated that a friend referred them to a person, known only as "Nancy", who had neighbors with property they planned to sell. The Fulchers stayed at "Nancy's" house that day and, according to Mr. Fulcher, permitted "Nancy" to use Fulcher's truck, which was about a month old, to move some

---

[2] Fulcher argues in her brief that there was a mix-up regarding which light bulb tested positive for methamphetamine because although the crime lab witness testified that the light bulb he tested was found in the blue bag and marked as Exhibit 7, Deputy Johnson testified regarding a second light bulb also found in the blue bag and identified as Exhibit 8. However, the record reflects that, unlike Exhibit 7, Exhibit 8 was an intact bulb that had not been tested. Further, the crime lab witness testified that Exhibit 7 was comprised of broken glass.

items.  Mr. Fulcher admitted the Exacto knife was his, but denied that his wife owned the blue bag found in her truck.  Mr. Fulcher further denied that Fulcher had sores on her body or burned lips when she was arrested.

Fulcher also testified.  When asked about the broken glass found under her parked vehicle, she stated she had no knowledge of it.  Further, in response to the State's inquiry regarding the mirror found in her glove compartment containing methamphetamine residue, Fulcher stated she did not "recall" a mirror.  Fulcher also testified that she had owned the truck for thirty days but had only driven it three times during this period, including, apparently, the trip to Hondo the day before, and the night in question.  Fulcher did, however, admit to purchasing the Sunkist that night just prior to arriving at the location.

A jury found Fulcher guilty as indicted.  The trial court assessed punishment at one year's confinement, fully probated, a fine, and court costs.  Fulcher appeals, contending that the trial court committed reversible error in failing to charge the required culpable mental state in the jury charge.

### STANDARD OF REVIEW AND APPLICABLE LAW

In reviewing charge error, we must first determine whether error exists.  *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). If we find error, we must then determine whether the error caused sufficient harm to require reversal. *Id.*; *see also Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996). The degree of harm necessary for reversal depends upon whether the error was preserved. *Almanza*, 686 S.W.2d at 171.  Error properly preserved by an objection to the charge will require reversal as long as the error is not harmless. *Id.*  The court of criminal appeals has interpreted this to mean that any harm, regardless of degree, is sufficient to require reversal. *Id.*

However, for charge error that was not preserved at trial,  the defendant must have suffered actual egregious harm, that is, the error must be so harmful that it affects the very basis of the case,

deprives the defendant of a valuable right, or vitally affects a defensive theory. *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006). The purpose of this review is to illuminate the actual, not just theoretical, harm to the accused. *Ngo v. State*, 175 S.W.3d 738, 750 (Tex. Crim. App. 2005); *Almanza*, 686 S.W.2d at 174. Absent a showing to the contrary, we may presume that the jury acted rationally. *Richardson v. State*, 879 S.W.2d 874, 882 (Tex. Crim. App.1993). "[E]gregious harm is a difficult standard and must be proved on a case-by-case basis." *Ellison v. State*, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002); *see also Hutch*, 922 S.W.2d at 171.

In considering whether jury charge error caused egregious harm, we consider the following: 1) the jury charge in is entirety; 2) the evidence, including the contested issues and the weight of probative evidence; 3) counsels' statements during voir dire and at trial; and 4) any other relevant information in the record. *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007); *Almanza*, 686 S.W.2d at 171. Where the application paragraph correctly instructs the jury but the abstract paragraph is erroneous, any error contained in the abstract instruction is not egregious. *Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999). However, where, as in this case, the jury charge contains all the required mens rea in the abstract and definition paragraphs, but fails to include an explicit mens rea in the application paragraph, we must consider whether jury charge error caused egregious harm as "the crucial part of the charge in determining the existence of fundamental error is that part where the law is applied to the facts." *Hanks v. State*, 625 S.W.2d 433, 435 (Tex. App.–Houston [14th Dist.] 1981, no pet.).

## DISCUSSION

Fulcher was indicted with "intentionally and knowingly possess[ing] a controlled substance, to wit, Methamphetamine in the amount of less than one gram." The application paragraph of the court's charge did not include an explicit mens rea, and Fulcher did not object to the jury charge.

The State concedes that "it is likely that jury-charge error did occur in this case," but argues that the error did not cause egregious harm. Accordingly, the issue before this court is whether Fulcher suffered actual egregious harm, that is, error so harmful that Fulcher was denied a fair and impartial trial as a result of this charge error. *Sanchez*, 209 S.W.3d at 125.

Fulcher maintains that she was egregiously harmed by the trial court's failure to charge the required culpable mental state because the State failed to prove that Fulcher knowingly and intentionally possessed the items that tested positive for methamphetamine and instead, only showed that Fulcher drove the vehicle. We disagree.

In analyzing the *Almanza* factors, we first look at the jury instructions as a whole. *See Stuhler*, 218 S.W.3d at 719; *Almanza*, 686 S.W.2d at 171. Here, the court's charge began with the abstract paragraph:

I.

Our law provides that a person commits an offense if, she intentionally or knowingly possesses a controlled substance. Under our law, methamphetamine is a controlled substance.

The abstract paragraph went on to define "intentionally" and "knowingly" as follows:

III.

A person acts intentionally, or with intent, with respect to the nature of her conduct when it is her conscious objective or desire to engage in the conduct.

A person acts knowingly, or with knowledge, with respect to the nature of her conduct when she is aware of the nature of her conduct or to the circumstances surrounding her conduct when she is aware of the nature of her conduct or that the circumstances exist.

Immediately following the definition of "intentionally" and "knowingly" is the application paragraph:

IV.

Now if you find from the evidence beyond a reasonable doubt that on or about the 16th day of September, 2004, in Bandera County, Texas, the defendant, Melissa Ann Fulcher, did then and there possess a controlled substance, to-wit: methamphetamine in an amount of less than one (1) gram, then you will find the defendant guilty as charged.

Thus, in viewing the charge as a whole, the abstract portion of the charge, which contained both the required culpable mental state and the accompanying definitions, sufficiently informed the jury of the mental state required for commission of the charged offense. *See Dinkins v. State*, 894 S.W.2d 330, 339 (Tex. Crim. App. 1995); *Lane v. State*, 957 S.W.2d 584, 587 (Tex. App.–Dallas 1997, pet. ref'd).

Second, we look to the state of the evidence and the contested issues. The primary disputed issue at trial was whether Fulcher intentionally or knowingly possessed the methamphetamine. Fulcher claimed she had no knowledge of the items found in her vehicle that tested positive for methamphetamine, had only driven her vehicle three times, and had recently loaned her vehicle to an unknown person by the name of "Nancy."

However, the record reflects that on the night in question, Fulcher, who was alone and had parked her vehicle in an isolated spot, exhibited signs of recent drug use, including excitability, dilated pupils, numerous sores and blisters, and lip burns. Further, although Fulcher denied owning the blue bag found in the back of her truck, which contained a broken bulb with burnt residue, there was evidence that a broken bulb was also found at the scene underneath Fulcher's vehicle on the driver's side, which also contained burned residue consistent with the black burned residue coming from methamphetamine pipes. Additionally, when asked about a mirror, which contained a trace of methamphetamine and was found in the open glove compartment of her vehicle, Fulcher merely stated that she could not recall any mirror. Further, Fulcher admitting to stopping at an ice house earlier that evening and purchasing a Sunkist, which the drug dog later alerted to, along with the blue bag containing the light bulb fragments.

The only contrary proof presented, other than Fulcher's testimony, was that of Fulcher's husband, who testified that the day before Fulcher's arrest, a friend referred them to a person living in Hondo and known only as "Nancy", whom the Fulchers lent their new truck to later that day so that "Nancy" could move some items. Mr. Fulcher denied that his wife owned the blue bag found in her truck and, further denied that she had sores on her body or burned lips when she was arrested; however, two officers at the scene testified that Fulcher had sores on her face and body, including Deputy Johnson who testified that in addition to sores on her face and arms, Fulcher had "a real thick white coating across her tongue with blisters on her tongue," and burn marks on her lips, which he stated, based on his training and experience, indicated that Fulcher smoked methamphetamine or crack cocaine.

Third, we look to the arguments of counsel. The record reflects that during voir dire, the State told the jury panel at the very beginning of the case that it had to prove that Fulcher

intentionally or knowingly possessed a controlled substance. During opening statements, the State repeated a similar statement to the jury.

Thus, in reviewing the jury charge in its entirety, the evidence, and counsel's statements, we find that the court's error in omitting the requisite mental state from the application paragraph of the charge did not result in egregious harm to Fulcher. *See Stuhler*, 218 S.W.3d at 719; *Almanza*, 686 S.W.2d at 171.

Fulcher's issue is denied.

### CONCLUSION

Finding no egregious harm, we affirm the trial court's judgment.


Karen Angelini, Justice

PUBLISH