COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| JOHN WEIR, | | No. 08-07-00148-CR |
| | § | |
| Appellant, | | Appeal from the |
| | § | |
| V. | | 210th District Court |
| | § | |
| THE STATE OF TEXAS, | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC# 20060D05150) |
| | § | |
| | § | |

## **O P I N I O N**

This is an appeal from an aggravated robbery with a deadly weapon conviction. Appellant was found guilty of two counts of aggravated robbery with a deadly weapon. He was sentenced to 60 years' confinement with the Institutional Division of the Texas Department of Criminal Justice for each count to be served concurrently. Appellant raises two issues on appeal: (1) that the trial court unfairly coerced the jury with comments about sequestration and by including an *Allen* charge in the jury instructions; and (2) that the evidence was legally insufficient to support the jury's deadly weapon finding. We will affirm.

The evidence reflects that John Weir confessed to meeting Ismael Mireles through his girlfriend, who was Mireles's step-daughter. They discussed the idea of robbing the Lowe's Store, where Mireles had once worked. Mireles also claimed he knew how to do it and that he had everything needed to do the job, which included beanies, gloves, a pistol, duct tape, and paint. Mireles asked Weir to help him because he felt confident with him. Weir admitted that he

had agreed.

Before they entered the store, Mireles gave Weir some bullets to hold. They entered shortly before closing time, then they hid, and after the store closed and the doors were locked from the outside, they accosted and tied up the two cleaning workers left inside the locked building. Mireles passed Weir the revolver, so he could tie up the men with tape.

When a security alarm was activated as the two ran to the front of the store. Mireles tried to kick out the glass door, but had to shoot the glass out. Weir stated that once outside, he heard gunshots but he ran away. He ran past a drainage reservoir and then jumped a fence into a backyard where he hid in a shed. The police found him there without a weapon, but he still had the bullets Mireles had given him.

Jorge Jimenez testified that he and Jose Vasquez were cleaning floors at Lowe's on October 5, 2006. As usual, they arrived at 10:30 p.m. and the store managers left at 10:50 p.m. When the managers leave, the cleaners are locked in the store until about 6 a.m. They were working when two men dressed in black came up to them. He described one as skinny and taller than him and the other shorter and chubby. Mr. Jimenez and Mr. Vasquez were ordered to get down on the floor and one of the robbers pointed a handgun at Mr. Jimenez's head. Mr. Jimenez testified that the skinny man had the handgun and that he put the pistol against Mr. Jimenez's head. The other chubby man tied Mr. Jimenez's hands and feet together.

Mr. Vasquez testified that the man with the handgun also yelled at him not to move, to put his hands on his head, and to get down on his knees. Then the gunman put the gun to his head and asked where the guard was. Mr. Vasquez told the robber that nobody else was there. The gunman told him that if he was lying, he would shoot him. The other man then tied him up.

The handgun was pointed at Mr. Vasquez while he was being tied up. Mr. Vasquez also testified that the gunman hit him on the head with the pistol while he was asking questions. Mr. Vasquez described the gunman as tall and skinny. Mr. Vasquez also knew Ismael Mireles from working at Lowe's, and he described Mr. Mireles as "kind of chubby," and also testified that the man holding the gun did not look anything like Mr. Mireles.

Police Officer James O'Conner testified that at about 11:20 p.m., on October 5, 2006, he was on patrol when he and his partner heard an audible alarm coming from Lowe's Super Save Store. As they got out of their patrol car, he could see two men dressed in black on the inside of the store, running up to the exit doors. One was a heavy-set male and the other was a taller, thinner male. The heavy-set male tried to kick the bottom glass out but when it did not break, he stepped back, pulled out a pistol, and shot out the glass. The heavy-set male crawled through the hole, and Officer O'Conner yelled out "police." The officer testified that that heavy-set robber shot at him several times and then turned to run away. Another male then crawled out and followed the first robber.

The police officers gave chase and found the robbers hiding around the corner of the building next to a tree. The heavy-set male, shot at them again, and Officer O'Conner's partner returned fire. This robber later shot and killed himself.

Officer O'Conner testified that he saw both individuals with guns. However, only one .357 handgun was found and only two spent and matching shell casings were recovered from the crime scene. One was found where the glass door was shot out and the other where Mr. Mireles shot himself.

During the trial court's explanation to the jury of preparing the charge, the following

-3-

exchange occurred:

> The Court: I don't plan -- once the case is formally submitted for your deliberations you cannot separate, which means that once I give it to you we may stay here late and depending on how soon you reach a verdict or you -- it takes as long as it takes, that's fine, but the Court will have to -- and may consider a sequestration, which means you will have to stay at a hotel if we do not reach a verdict today.
>
> I'm hoping that we'll get this taken care of today and we'll go as late as possible tonight. I want to get this over with so we can get through the first stage of trial as soon as possible. And -- because -- so we can have, you know, the rest of the time or the week available to the Court depending on what you-all do.
>
> Mr. Dekoatz: Judge, you know, I have to object there. I know you're not trying but I have to object to it because you're basically telling the jury they're going to the second phase.
>
> The Court: No. What I'm telling the jury is that I have to leave on Thursday, which means I would want to get through this case before I leave. If not another judge will be here on Thursday. So, I'll be gone -- I'll be leaving after tomorrow.
>
> .        .        .
>
> But as far as you not being able to separate. Once you-all get the case you will not be able to separate, which means that may entail on setting you up in a hotel for the evening, which the Court will allow you to make arrangements to get whatever you need for that. But, please we'll stay -- we'll be in recess, keep in mind the Court's instructions; don't talk about the case until after I have submitted the charge to you and you have gotten the case submitted formally to you.

The trial court also included a "dynamite" or *Allen* charge in the jury instructions during the

guilt-innocence and punishment stages of the trial.

In Issue One, Appellant first argues that the trial court threatened jury sequestration and

commented on the weight of the evidence, which amounted to jury coercion.

-4-

There are no set time limits on jury deliberations, and the length of time the jury may be held to deliberate is left to the sound discretion of the trial court. *See Guidry v. State*, 9 S.W.3d 133, 155 (Tex.Crim.App. 1999), *cert. denied*, 531 U.S. 837, 121 S.Ct. 98, 148 L.Ed.2d 57 (2000). "The court on its own motion may and on the motion of either party shall, after having given its charge to the jury, order that the jury not be allowed to separate . . . ." TEX.CODE CRIM.PROC.ANN. art. 35.23 (Vernon 2006). On the other hand, Article 38.05 of the Texas Code of Criminal Procedure provides, in part, that a judge may not at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case. TEX.CODE CRIM.PROC.ANN. art. 38.05 (Vernon 1979). Further, due process requires a neutral and detached hearing body or office. *Brumit v. State*, 206 S.W.3d 639, 645 (Tex.Crim.App. 2006). A trial court improperly comments on the weight of the evidence if it makes a statement that implies approval of the State's argument, indicates any disbelief in the defense's position, or diminishes the credibility of the defenses approach to its case. *Hoang v. State*, 997 S.W.2d 678, 681 (Tex.App.--Texarkana 1999, no pet.).

We must then consider whether the remarks by the trial court made to the jury, however impartially made, may have led the jury to infer what the judge's opinion of the merits of the case were. *Id*. To be reversible, a violation of Article 38.05 must be reasonably calculated to benefit the State or prejudice the rights of the defendant. *Sharpe v. State*, 648 S.W.2d 705, 706 (Tex.Crim.App. 1983). In evaluating whether the court's comment on the evidence was reasonably calculated to benefit the State or prejudice the defendant, the reviewing court first examines whether the statement was material to the case; a comment is material if the jury has the same issue before it. *Clark v. State*, 878 S.W.2d 224, 226 (Tex.App.--Dallas 1994, no pet.).

The reviewing court must consider the consequences that probably resulted from the trial court's comment, and the error is harmless if the court determines beyond a reasonable doubt that the court's error made no contribution to the defendant's conviction. *Id*.; *see also* Tex.R.App.P. 44.2.

While the court told the jury that they could be sequestered, the court also told the jury that they could take as long as necessary to reach a verdict. As the trial court clearly had the discretion to sequester the jury once they started deliberating, this comment merely informed them that they could be sequestered. *See* Tex.Code Crim.Proc.Ann. art. 35.23.

The focus of the improper comment on the weight of the evidence is on the trial court's comment: "I'm hoping that we'll get this taken care of today and we'll go as late as possible tonight. I want to get this over with so we can get through the first stage of trial as soon as possible." Appellant argues that the court was stating that there would be a second stage of trial, thus implying that Appellant was guilty. Indeed, that is the implication with the statement standing alone; however, the next sentence was "[a]nd -- because -- so we can have, you know, the rest of the time or the week available to the Court depending on what you-all do." We do not understand that statement to imply that there would be a second stage of trial, but rather that the court's schedule would be dictated by what the jury decided. So, we find, that taken together, the comments were neither reasonably calculated to benefit the State nor prejudice the rights of the defendant, and as such presents no reversible error.

Appellant next argues that the trial court erred by giving the jury *Allen* charges before beginning to deliberate in both the guilt-innocence stage and punishment stage. Jury charge error is reviewed on appeal by determining whether there was error, and if so, whether that error

caused sufficient harm to require reversal. *Hutch v. State*, 922 S.W.2d 166, 170-71

(Tex.Crim.App. 1996). The degree of harm necessary for reversal depends on whether the error

was preserved. *Id*. at 171. Preserved error will require reversal as long as the error is not

harmless, meaning any harm present requires reversal. *Id*. When error is not preserved,

egregious harm must be shown. *Id*. Egregious harm affects the very basis of the case, deprives

the defendant of a valuable right, or vitally affects a defensive theory. *Id*. In conducting a harm

analysis, the reviewing court may consider the following four factors: the charge itself; the state

of the evidence including contested issues and the weight of the probative evidence; arguments

of counsel; and any other relevant information revealed by the record. *Id*.

The charge at the guilt and punishment phases of the trial stated in relevant part:

Concerning manner of deliberation:

(a)     Do not let bias, prejudice or sympathy play any role in your deliberations.
(b)     in order to return a verdict, each juror must agree thereto;
(c)     jurors have a duty to consult with one another to deliberate with a view of reaching an agreement, if it can be done without violence to individual judgment.
(d)     each juror must decide the case for themselves, but only after an impartial consideration of the evidence with their fellow jurors.
(e)     in the court of deliberations, a juror should not hesitate to reexamine their own views and change their opinion if convinced it is erroneous.
(f)     No juror should surrender their honest conviction as to the weight or effect of the evidence solely because of the opinion of fellow jurors, or for the mere purpose of returning a verdict.
(g)     If the jury is unable to reach a verdict it will be necessary for the Court to declare a mistrial and discharge the Jury. The case will still be pending, and it is reasonable to assume that the case will be tried again before another jury at some future time. Any such future jury will be empanelled [sic] in the same way this jury has been empanelled [sic], and will likely hear the same evidence, which has been presented to this jury. The questions to be determined by that jury will be the same as the questions confronting you and there is not hope that the next jury will find those questions any easier to decide than you have found them.

Appellant did not object to the inclusion of the *Allen* charges in the jury instructions, so he is required to show egregious harm. However, we must first determine whether it was error to include the *Allen* charges in the instructions to the jury. We have previously held that including an *Allen* charge, similar to this one, in the main charge is not coercive, but we continue to strongly discourage the practice since it presents the potential for coercion and its application is best suited for when a jury becomes deadlocked. *Love v. State*, 909 S.W.2d 930, 936 (Tex.App.--El Paso 1995, pet. ref'd). We find likewise that no coercive impact in this case or error, and accordingly, Appellant's Issue One is overruled.

In Issue Two, Appellant argues the evidence was legally insufficient to support the jury's deadly weapon finding. In a legal sufficiency challenge, we consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Rollerson v. State*, 227 S.W.3d 718, 724 (Tex.Crim.App. 2007). We do not resolve any conflict of fact or assign credibility to the witnesses, as it was the function of the trier of fact to do so. *See Adelman v. State*, 828 S.W.2d 418, 421 (Tex.Crim.App. 1992).

A person commits an offense of aggravated robbery if he commits robbery as defined in Section 29.02 and:

(1)     causes serious bodily injury to another;
(2)     uses or exhibits a deadly weapon; or
(3)     causes bodily injury to another person or threatens or places another person in fear of imminent bodily injury or death, if the other person is:
     (A)     65 years of age or older; or
     (B)     a disabled person.

TEX.PENAL CODE ANN. § 29.03(a)(Vernon 2003).

A firearm is a deadly weapon per se. TEX.PENAL CODE ANN. § 1.07(a)(17)(A)(Vernon Supp. 2009); *Ex parte Huskins*, 176 S.W.3d 818, 820 (Tex.Crim.App. 2005). We must examine whether Appellant used or exhibited the .357 during the course of the robbery. In his confession, Appellant admitted to holding the revolver while Mr. Mireles tied up the men. Mr. Vasquez and Mr. Jimenez both testified that one of the robbers pointed the gun at them while the other tied them up. While Appellant did not admit to pointing the weapon at the men, the jury could have believed the two victims and not the Appellant. There is, therefore, direct evidence that Mr. Weir used a deadly weapon, the revolver, during the robbery. The jury could have rationally found the elements of the crime beyond a reasonable doubt. The evidence is legally sufficient. Issue Two is overruled.

Having overruled all of Appellant's issues, we affirm the judgment of the trial court.

January 27, 2010

DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, J., and Barajas, C.J. (Ret.)
Barajas, C.J. (Ret.)(Sitting by Assignment)

(Do Not Publish)