J.C. HUTCH, Appellant,

v.

**The STATE of Texas, Appellee.**

No. 1231–94.

Court of Criminal Appeals of Texas, En Banc.

April 3, 1996.

Frances M. Northcutt, Houston, for appellant.

Alan Curry, Assist. Dist. Atty., Houston, Robert A. Huttash, State's Atty., Austin, for State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

BAIRD, Judge.

A jury convicted appellant of possession of cocaine and the trial judge assessed punishment at forty years confinement. The Court of Appeals affirmed. *Hutch v. State*, 881 S.W.2d 92 (Tex.App.—Houston [1st] 1994). We granted review to consider whether the Court of Appeals correctly applied the test for determining whether an erroneous jury charge caused egregious harm. We will reverse.

### I.

### A.

### The Trial Court

According to the State's testimony, Houston police officers stopped a vehicle, in which appellant was a front-seat passenger, because neither appellant nor the driver were wearing seat belts. As the officers approached the vehicle, appellant leaned forward and dropped an object on the floor of

1. All emphasis is supplied unless otherwise indi-

the car. This object was later determined to be cocaine. However, appellant testified he and the driver were wearing their seat belts at the time of the stop.

Because appellant's testimony contradicted that of the officers, the legality of the stop was called into question. Accordingly, the trial judge instructed the jury as required by Tex.Code Crim.Proc.Ann. art. 38.23 that illegally obtained evidence was not admissible:

> You are instructed that no evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

The trial judge then charged the jury as follows:

> An officer is permitted, to make a temporary investigative detention of a motorist if the officer has a reasonable suspicion that some activity out of the ordinary has occurred, that the person detained is connected with such activity, and that there is some indication that the activity is related to crime or a criminal offense. Now bearing in mind these instructions, if you find from the evidence that on the occasion in question the driver and front seat passenger were *not* wearing seat belts immediately preceding the stop and detention by the police officer, or you have a reasonable doubt thereof, *then such stopping of the accused would be illegal,* and if you find the facts so to be, or if you have a reasonable doubt thereof, you will disregard the testimony of the officer relative to his stopping the defendant and his conclusions drawn as a result thereof and you will *not consider such evidence for any purpose whatsoever.*[1]

Near its end, the jury charge stated:

> You are the exclusive judges of the facts proved, of the credibility of the witnesses and the weight to be given their testimony, but the law you shall receive in these

cated.

written instructions, *and you must be governed thereby.*[2]

Appellant did not object to the jury charge. *Id.*

## B.

### The Court of Appeals

On appeal, appellant contended the charge was not a correct statement of the law. The Court of Appeals agreed:

> Appellant accurately points out that the court misstated the law. The police could lawfully detain if appellant were not wearing a seatbelt, *and the police could not lawfully detain if appellant were wearing a seatbelt. The statement that a detention was illegal if appellant were not wearing a seatbelt is unquestionably wrong.* (Citation omitted.)

*Hutch,* 881 S.W.2d at 94.

Because there was no objection to the erroneous jury charge, the Court of Appeals purported to conduct the harm analysis prescribed by *Bailey v. State,* 867 S.W.2d 42, 43 (Tex.Cr.App.1993), and *Almanza v. State,* 686 S.W.2d 157 (Tex.Cr.App.1985). The Court concluded no egregious harm was shown because the jury was correctly instructed elsewhere in the jury charge, and further, because the prosecutor and defense attorney correctly argued the law. *Hutch,* 881 S.W.2d at 94–95. The Court reasoned the correct general instruction, coupled with the arguments of the attorneys, cured any error resulting from the incorrect application of the law to the facts:

> ... It was clear to the jurors that they were not to consider the evidence seized if they found that appellant and the driver *were* wearing seat belts, or if they had a reasonable doubt about that fact.

*Id.,* 881 S.W.2d at 95 (emphasis in original).

Justice O'Connor dissented, arguing the misstatement of the law constituted egregious harm and deprived appellant of a fair trial. *Id.,* 881 S.W.2d at 96. Justice O'Connor found nothing in the record to demonstrate the jury correctly understood or applied the law, and argued: "It cannot be

harmless error to instruct the jury that the law is the opposite of what it actually is." *Ibid.* Appellant petitioned this Court for review of the Court of Appeals' decision. The State did not file a cross-petition.

## II.

### The *Almanza* Standard of Harm

 The purpose of the jury charge is to inform the jury of the applicable law and guide them in its application to the case:

> It is not the function of the charge merely to avoid misleading or confusing the jury; it is the function of the charge to lead and to prevent confusion. A charge that does not apply the law to the facts fails to lead the jury to the threshold of its duty: to decide those fact issues.

*Williams v. State,* 547 S.W.2d 18, 20 (Tex.Cr. App.1977). The jury charge must allow the jury to determine the defendant's guilt in light of the evidence and the law. *Benson v. State,* 661 S.W.2d 708, 715 (Tex.Cr.App.1982). And, absent evidence to the contrary, we presume the jury followed the law provided by the charge. *See, Rose v. State,* 752 S.W.2d 529, 554 (Tex.Cr.App.1987) (op'n on reh'g); *and, Cobarrubio v. State,* 675 S.W.2d 749, 752 (Tex.Cr.App.1983).

### A.

In *Almanza v. State,* 686 S.W.2d 157 (Tex. Cr.App.1985) (op'n on reh'g), the defendant raised for the first time on appeal a variance between the jury charge and his indictment. *Id.,* 686 S.W.2d at 159. The Court of Appeals found error in the charge and reversed. However, we reviewed that decision and, in the process, dispensed with the practice of automatically reversing upon a finding of jury charge error.

 In *Almanza,* we held that Tex.Code Crim.Proc.Ann. art. 36.19 prescribed the manner in which jury charge error is reviewed on appeal. *Almanza,* 686 S.W.2d at 171. First, an appellate court must determine whether error exists in the jury charge. Second, the appellate court must determine whether sufficient harm was caused by the

---

2. *See,* Tex.Code Crim.Proc.Ann. art. 36.13.

error to require reversal. *Arline v. State,* 721 S.W.2d 348, 351 (Tex.Cr.App.1986). The degree of harm necessary for reversal depends upon whether the error was preserved. *Ibid.* Error properly preserved by an objection to the charge will require reversal "as long as the error is not harmless." *Almanza,* 686 S.W.2d at 171. We have interpreted this to mean *any* harm, regardless of degree, is sufficient to require reversal. *Arline,* 721 S.W.2d at 351. However, when the charging error is not preserved a greater degree of harm is required. This standard of harm is described as "egregious harm." *Almanza,* 686 S.W.2d at 171. We explained that errors which result in egregious harm are those which affect "the very basis of the case," deprive the defendant of a "valuable right," or "vitally affect a defensive theory." *Id.,* 686 S.W.2d at 172 (citations omitted). Moreover, we do not require direct evidence of harm to establish egregious harm. *Castillo–Fuentes v. State,* 707 S.W.2d 559, 563, n. 2 (Tex.Cr.App.1986).

In either event, when conducting a harm analysis the reviewing court may consider the following four factors: 1) the charge itself; 2) the state of the evidence including contested issues and the weight of the probative evidence; 3) arguments of counsel; and, 4) any other relevant information revealed by the record of the trial as a whole. *Bailey v. State,* 867 S.W.2d 42, 43 (Tex.Cr.App.1993) (citing *Almanza*).

### B.

Because appellant did not preserve the jury charge error, resolution of the instant case requires an egregious harm analysis. Egregious harm is a difficult standard to prove and such a determination must be done on a case-by-case basis. We have undertaken that task on several occasions to determine whether the courts of appeals correctly applied the analysis required by *Almanza.*

For example, in *Ruiz v. State,* 753 S.W.2d 681, 686 (Tex.Cr.App.1988), the Court focused on the charge itself to determine egregious harm. Ruiz was charged with murder but the record contained some evidence that Ruiz may be guilty only of the lesser included offense of voluntary manslaughter. However, the trial judge failed to instruct the jury on the State's burden to prove that Ruiz's actions were not the result of sudden passion arising from an adequate cause in the murder application paragraph. We held Ruiz suffered egregious harm because a possibility existed that the jury was confused and misled into ending their deliberations under the incorrect instruction on the law. The charge lowered the State's burden of proof, creating the possibility Ruiz was convicted on less than all the elements of murder. *Id.,* 753 S.W.2d at 684.

In *Manning v. State,* 730 S.W.2d 744 (Tex. Cr.App.1987), a jury trial was held to determine the competency of the defendant. *Id.,* 730 S.W.2d at 745. Although proof of a prior, unvacated finding of incompetency was produced, the trial judge instructed the jury that the State had the burden of proving the defendant competent to stand trial *by a preponderance of the evidence.* We held the charge incorrectly instructed the jury on the State's burden of proof and found egregious harm:

In light of the existing adjudication of incompetency ... we cannot say that appellant was not harmed by the jury's consideration of the evidence under a lesser burden of proof than should have been given.

*Id.,* 730 S.W.2d at 750. Thus, in some cases, the charge itself will demonstrate egregious harm.

On the same day *Almanza* was delivered, we decided *Kucha v. State,* 686 S.W.2d 154 (Tex.Cr.App.1985), wherein we considered the "state of the evidence" prong of the *Almanza* analysis. In *Kucha,* the State sought to enhance the defendant's punishment by proving he was an habitual criminal. The jury charge correctly instructed the jury on the range of punishment if they determined the defendant was an habitual criminal, but failed to instruct the jury otherwise. *Id.,* 686 S.W.2d at 155. We held such error was not egregious:

... The fact of the prior convictions *was not a contested issue* at all. Appellant's plea of "not true" only put the State to its

proof. Considering that the evidence of the prior convictions was undisputed, uncontradicted, and seemed to have been taken almost as a "given" by the parties, we hold that the failure of the court to charge on the range of punishment if the enhancements were found to be untrue, was not so harmful that it deprived appellant of a fair and impartial trial. If the evidence of the prior conviction had not been so strong, or *if appellant had contested it in some fashion,* this issue would not be so clearcut. But, from the record it appears that all parties, including appellant, assumed the fact of the prior conviction and did not dispute its truth. Also, the prior was proven beyond a reasonable doubt by the State. In light of the record we hold that the error was not fundamental.

*Id.,* at 156. Thus, in *Kucha,* we held that one of our considerations in the determination of egregious harm is whether the error related to a "contested issue." *See also, Williams v. State,* 851 S.W.2d 282, 289 (Tex.Cr.App.1993) (No egregious harm where error related to *incidental theory of defense.*).

At times we look to any other relevant information revealed by the record of the trial as a whole to determine egregious harm. For example, in *Saunders v. State,* 817 S.W.2d 688 (Tex.Cr.App.1991), the defendant was convicted of conspiracy to commit arson upon the testimony of an accomplice witness. However, the jury was not instructed that accomplice testimony must be corroborated. *Saunders,* 817 S.W.2d at 689. *See,* Tex.Code Crim.Proc.Ann. art. 38.14. We reviewed the record and determined the accomplice's testimony was critical to the outcome of the trial. We held failure to instruct the jury on the need to corroborate the accomplice's testimony effectively denied the defendant a fair trial and, thus, constituted egregious harm. *Saunders,* 817 S.W.2d at 693.

### III.

#### Application of the Law

Turning to the instant case, the Court of Appeals was required to determine whether the error affected the very basis of the case, deprived the defendant of a valuable right, or vitally affected his defensive theory—in short, whether appellant suffered egregious harm. *Almanza,* 686 S.W.2d at 172.

#### A.

The application paragraph instructed the jury to ignore the police officer's testimony and resulting evidence if the jury believed the stop and detention of appellant occurred because seat belts were *not* being worn. As the Court of Appeals noted, the instruction was "unquestionably wrong." *Hutch,* 881 S.W.2d at 94. As noted by Justice O'Connor, the instruction was 180 degrees opposite of what it should have been. 881 S.W.2d at 96. Nevertheless, the Court of Appeals held the otherwise correct instructions within the jury charge were sufficient to prevent any misunderstanding or confusion. The Court of Appeals noted that nothing in the record indicates the jury misunderstood the applicable law. 881 S.W.2d at 94–95. This holding is erroneous for at least two reasons.

First, the Court of Appeals did not consider the appellate presumption that the jury is presumed to have understood and followed the court's charge absent evidence to the contrary. *Rose, supra; Cobarrubio, supra; see generally, Gardner v. State,* 730 S.W.2d 675, 696 (Tex.Cr.App.1987). Under this presumption, we must presume the jury followed the erroneous instruction which authorized the stop if appellant *was* wearing a seat belt. In fact the opposite is true; such a stop would have been *illegal.* Under the erroneous instruction, the only way the jury could have convicted was by using illegally obtained evidence.

Second, it is important to note that the error occurred in the application paragraph. The application paragraph is that portion of the charge which authorizes the jury to act. *Jones v. State,* 815 S.W.2d 667, 669 (Tex.Cr.App.1991). Consequently, even though the charge elsewhere contained a correct statement of art. 38.23, that instruction did not authorize the jury to consider or not consider the evidence obtained from appellant's stop. It is not sufficient for the jury to receive an abstract instruction on the law. *Williams,* 547 S.W.2d at 20. An ab-

stract charge does not inform the jury of what facts, if found by it, would permit the jury's consideration of the contested evidence. *Ibid.* Rather, the authority to consider or not consider the evidence obtained from appellant's stop came solely from the erroneous application paragraph. The Court of Appeals did not consider that the correct statement of art. 38.23 did *not* authorize the jury to correctly apply the law. Consequently, the Court of Appeals' analysis under the first factor of *Almanza* was erroneous.

### B.

▮ The second factor of the *Almanza* analysis requires a determination of whether the jury charge error related to a contested issue. However, the Court of Appeals considered whether the testimony was equivocal.[3] This was erroneous. Under an *Almanza* analysis, there is no requirement that the testimony be equivocal; in fact parties often present unequivocal evidence to support their respective sides of the case. Instead, this factor asks if the jury charge error related to a contested issue. In the instant case, the issue was obviously contested, otherwise an instruction would not have been required. *Thomas v. State,* 723 S.W.2d 696, 707 (Tex.Cr.App.1986) (When a factual dispute arises as to whether the evidence was legally obtained, a charge on the issue is required.).[4] In fact, the legality of the stop was the crux of appellant's case. *Accord, Ruiz,* 753 S.W.2d at 685.[5] *Compare, Kucha,* 686 S.W.2d at 156; *and, Williams,* 851 S.W.2d at 289. Whether appellant was to be convicted depended upon whose testimony

the jury found credible. Consequently, we hold the Court of Appeals' analysis under the second *Almanza* factor was erroneous.

Finally, in our analysis of this factor, after reviewing the entire record, we find nothing to indicate the jury did not follow the trial judge's erroneous instruction.

### C.

▮ The next factor in our analysis is the jury argument. *Bailey,* 867 S.W.2d at 43. Although neither party corrected the erroneous instruction, the parties correctly argued their respective positions.[6] In other words, the State argued that the stop of appellant was legal and that the evidence should be considered while appellant argued the stop was illegal and the evidence should not be considered. However, these were only small portions of the arguments; the bulk of the arguments were devoted to the issue of the credibility of the witnesses.

▮ It is axiomatic that jury arguments are not evidence and the jury may not consider them as such. In the instant case, the trial judge, immediately after reading the jury charge, stated: "Please remember that you have been instructed that what the attorneys say is not evidence in this case." Nor do jury arguments serve to instruct the jury on the law. In the instant case, the jury was instructed that they were to be governed by the law as set forth in the jury charge. *See,* I A, *supra.*

▮ The United States Supreme Court, when faced with the assertion that a

---

3. The Court of Appeals stated: "For the jury to have been confused on the law would have required it to have ignored both [the State's and appellant's] unequivocal evidence." *Hutch,* 881 S.W.2d at 94. Moreover, Judge Keller argues that the jury charge authorized acquittal on the wrong basis, but did not authorize conviction on the wrong basis. *Ante,* at 174. This argument is not supported by the record. As noted above, the issue of the legality of the stop was hotly contested. Because of the way the issue was developed in this case the jury necessarily assumed the only way the contraband could be considered was if appellant was wearing a seat belt.

4. If the officer's testimony as to the stop being legal was uncontroverted, no factual issue would

arise and no instruction would be required. By the same token, if the defendant's testimony as to the stop being illegal were not controverted, the trial judge would not have admitted the evidence. Tex.Code Crim.Proc.Ann. art. 38.23.

5. In *Ruiz* we noted that the testimony on the defensive theory was "substantial." *Id.,* 753 S.W.2d at 685. In the instant case, the testimony as to the reason for appellant's stop was obviously substantial.

6. Judge Keller agrees that the jury charge was erroneous but contends that it did not indicate the "converse." The jury arguments, appellate record and the opinion of the Court of Appeals belie this contention. *Hutch,* 881 S.W.2d at 94.

prosecutor's argument on a presumption of innocence cures a jury charge deficient in that instruction, wrote "arguments of counsel cannot substitute for instructions by the court." *Taylor v. Kentucky,* 436 U.S. 478, 488–489, 98 S.Ct. 1930, 1936, 56 L.Ed.2d 468 (1978). And, we have similarly noted that "jury argument is not a substitute for a proper jury charge." *Arline,* 721 S.W.2d at 353, n. 8.[7] Moreover, in *Ruiz, supra,* we held that jury argument is never alone a controlling factor in an *Almanza* harm analysis. *Ruiz,* 753 S.W.2d at 686. In light of the fact that the jury charge's application paragraph was so flawed as to charge the jury on the opposite of what the law actually provides, and further that this was a hotly contested issue at trial, we cannot conclude the error was "cured" by the jury arguments. *Ruiz, supra.*[8]

### D.

For these reasons we hold the Court of Appeals incorrectly applied the egregious harm analysis of *Almanza* and erred in concluding the error did not vitally affect appellant's defensive theory.[9]

### IV.

### Conclusion

A defendant is entitled to be convicted upon a correct statement of the law. In the instant case, the erroneous instructions had the effect of instructing the jury on the opposite of what the law actually is. Consequently, a jury who diligently followed the trial judge's instructions, as we must presume the jury did, would render a verdict in conflict with the Fourth Amendment and art. 38.23 because the conviction would be based upon illegally obtained evidence. The

right to a trial by jury in criminal matters is among those fundamental rights guaranteed by our Constitutions. In order to effectuate this valuable right, there is a minimal requirement that the instructions to the jury *not* be exactly opposite of what the law actually is.

The judgment of the Court of Appeals is reversed and the case is remanded to the trial court.

CLINTON, J., concurs in the result.

KELLER, Judge, dissenting.

To understand why the majority is wrong, one need only read the jury charge. Upon doing so it is apparent that, while the charge is erroneous, it is not erroneous in the way that the majority says it is.

The charge erroneously instructed the jury to disregard the officer's testimony if the jury believed that appellant was not wearing his seat belt. Thus, had the jury believed that appellant was not wearing his seat belt, and followed the instruction, the jury would have disregarded the testimony and acquitted appellant.

The charge did *not* instruct the jury as to the converse of the above. The charge did not tell the jury what to do if it believed that appellant was wearing his seat belt. In other words, the jury charge authorized acquittal on the wrong basis, but did not authorize conviction on the wrong basis. Thus, the majority is wrong when it says that the erroneous instruction "authorized the stop if appellant *was* wearing a seat belt." Op. 172.

As the majority says, there is an appellate presumption that the jury followed the court's charge absent evidence to the contrary. Op. 172. The majority "find[s] noth-

---

7. In a slightly different context, we have held that it is improper for attorneys to argue outside the court's charge. *Burke v. State,* 652 S.W.2d 788, 790 (Tex.Cr.App.1983); *Davis v. State,* 506 S.W.2d 909 (Tex.Cr.App.1974).

8. In *Williams,* 547 S.W.2d at 20, the Court stated:
 ... To allow the jury to receive an application of the law to the facts only from the partisan advocates without a neutral and unbiased instruction on the matter in the charge is to risk

the degeneration of trial by jury to a debating contest, where the persuasiveness of competing applications of the law to the facts determines guilt or innocence....

9. Throughout part III of this opinion we have identified and carefully discussed how the Court of Appeals erred in conducting its *Almanza* analysis. Judge Keller, in dissent, disagrees but does not suggest how this section of our opinion is in error.

ing to indicate the jury did not follow the trial judge's erroneous instruction." Op. 173. But we know that the jury did not follow the erroneous part of the instruction—to do so would have resulted in acquittal. The majority says, "[T]he only way the jury could have convicted was by using illegally obtained evidence." In fact, the only way the jury could have convicted was by disregarding the erroneous instruction and acting in accord with the rest of the jury charge and the jury arguments.

The Court of Appeals correctly applied the analysis set out in *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App.1984) (op. on rehearing) and reached a conclusion "within a reasonable zone of disagreement." *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim.App.1990) (op. on rehearing). I would affirm the judgments of the Court of Appeals and the trial court.

McCORMICK, P.J., and WHITE and MANSFIELD, JJ., join.