NO. 07-97-0489-CR
NO. 07-97-0490-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

SEPTEMBER 20, 2004

_____

RANDY LEE MOORE, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 320TH DISTRICT COURT OF POTTER COUNTY;

NO. 38,172-D AND 38,173-D; HON. DON EMERSON, PRESIDING

_____

Before REAVIS and CAMPBELL, JJ., and BOYD, S.J.[1]

**ON REMAND FROM COURT OF CRIMINAL APPEALS**

In each of these companion cases, appellant Randy Lee Moore was convicted by a Potter County jury of attempted capital murder. His punishment was assessed by the jury in each case at 99 years imprisonment and a $10,000 fine. These convictions and the

_____

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2004-2005).

ensuing sentences were affirmed by this court on March 30, 1999. *See Moore v. State,* Nos. 07-97-0489-CR and 07-97-0490-CR, 1999 WL 173563 (Tex. App.–Amarillo March 30, 1999, pet. dism'd) (not designated for publication). Because we had not had the benefit of the court's decision in *Huizar v. State,* 12 S.W.3d 479 (Tex. Crim. App. 2000) at the time of our decision, the Court of Criminal Appeals remanded the case to us for the purpose of conducting a harm analysis concerning the omission in the trial court's punishment charge of a burden of proof instruction restricting the jury's consideration of extraneous offenses to those proven beyond a reasonable doubt. *See Moore v. State,* Nos. 1038-03 and 1039-03, 2004 WL 231316 (Tex. Crim. App. January 21, 2004) (not designated for publication). For the reasons we discuss below, we affirm the judgments of the trial court.

In its remand, because the omission of the reasonable doubt instruction was not objected to at trial, the high court instructed us to review the evidence produced at trial to determine whether the charge error resulted in "egregious harm" to appellant as defined in the seminal case of *Almanza v. State,* 686 S.W.2d 157 (Tex. Crim. App. 1985). In *Hutch v. State,* 922 S.W.2d 166 (Tex. Crim. App. 1996), the court further explicated that errors that result in egregious harm are "those which affect 'the very basis of the case,' deprive the defendant of a 'valuable right,' or 'vitally affect a defensive theory,'" and it does not require direct evidence of the harm to establish that it was egregious. *Id.* at 171.

In conducting our harm analysis, the *Hutch* court further instructed that we may consider four factors: 1) the charge itself, 2) the state of the evidence including contested issues and the weight of the probative evidence, 3) arguments of counsel, and 4) any other relevant information revealed by the record of the trial as a whole. *Id.* Further, in

2

conducting our analysis, we must examine: 1) the source of the error, 2) the nature of the error, 3) whether, and to what extent it was emphasized by the State, 4) its probable collateral implications, 5) how much weight a juror would probably put upon the error, and 6) whether declaring the error harmless would encourage the State to repeat it with impunity. *Harris v. State*, 790 S.W.2d 568, 587-88 (Tex. Crim. App. 1989).

The question posed by the remand requires us to review the pertinent evidence produced at trial. The evidence in the case was that early on October 30, 1996, appellant and others were in the motel room of Katrina Attebury, an admitted former prostitute and recovering drug addict. Attebury averred that appellant possessed two firearms and numerous cartridges, which he had said "are for the cops" because he "was wanted." On that day, two Amarillo police officers arrived at the motel to arrest, with a warrant, another individual and, as well, to question appellant about a recent robbery. After being told that police officers were outside the room, appellant left for the stated purpose of getting a tape from his car. As the officers approached, appellant was partially within and partially without a parked car working under the dash with a screwdriver in his hand. When one of the officers, with a gun in his hand, directed appellant to drop the screwdriver, appellant fled toward a room in the motel. The officers approached him and attempted to handcuff him. Appellant resisted, secured a handgun, shot one of the officers in the calf of his leg, and fled while exchanging shots with the officers. A search of the area was conducted by the police and they later found appellant, still in possession of the handgun he had used in shooting at the officer, hiding in the bed of a pickup located about a block from the motel.

3

The testimony about extraneous offenses at the guilt-innocence phase of the trial came from Katrina Attebury, Janet McKee (appellant's community supervision officer), Africa Moore, and Robert Preston. Attebury testified that on the day of the occurrence, up until about an hour and a half before the shooting incident, she and appellant, among others, smoked crack cocaine. McKee testified that at the time of the incident, appellant was under deferred adjudication probation for aggravated robbery with a deadly weapon, and that a motion to proceed with adjudication on that offense was pending. She also said that at the time of her testimony, appellant had not actually been convicted of any offense made the basis of the motion. Moore testified that four days before the events giving rise to appellant's trial, appellant shot and kicked in the door of her house and, at gunpoint, took money from her person. Preston testified that on the day of the occurrence giving rise to this trial, appellant told Preston that he was in trouble for stealing his parents' guns. He also told Preston that he had used a gun in robbing a couple of crack houses and his gun had "gone off."

In our original opinion, we held the admission of Attebury's testimony about appellant's use of crack cocaine on the day in question was error, but no attempt was made to associate drug use to the offense, and reference to it was minimal. Thus, we concluded, its admission "was too insignificant for the jurors to give it any meaningful weight or to disrupt their orderly evaluation of the admissible evidence." *Moore v. State,* 1999 WL 173563 at 4. The remainder of the extraneous offense testimony was admissible, we held, because it was relevant to explain appellant's motive in attempting "to avoid apprehension for probation revocation and to avoid questioning about a recent robbery." *Id.* at 3.

4

At the trial court's punishment hearing, the State's only testimony was that of the two officers. Each was asked about his family and the number of years he had served as a police officer. They were not asked questions about the punishment that should be assessed, nor were they asked about possible leniency for appellant. In seeking a lenient sentence and to show that he could be a productive member of society if he was granted leniency, appellant called three witnesses, Donald Trainer, William Jones, and his mother, Barbara Moore. All three averred that appellant was entitled to a lenient sentence. Trainer and Jones were longtime family friends and testified about appellant's strong church participation in his youth.

During the cross-examination of Trainer, the prosecutor asked Trainer if he was familiar with the fact that appellant committed robberies in 1986 and 1996, as well as appellant's drug use. Trainer denied any knowledge of those matters. During Jones's cross-examination, Jones admitted he had heard that appellant was on probation for robbery in 1986, but when asked if he had heard that appellant committed another robbery in 1996 or that appellant had used firearms in those two occurrences, he replied that he had not heard that was the case.

Barbara Moore testified that she was aware that appellant had been placed upon probation when he was 18 years old. On cross-examination, over objection, she was asked if she was aware of 1994 probation revocation motions based upon an alleged DWI conviction, carrying an illegal weapon, and failure to pay probation fees. She denied any such knowledge. She also denied that she was aware of a 1996 probation revocation motion based upon an alleged failure to pay probation fees and to report a change of

5

address. However, she averred appellant had almost completed the ten-year probation term without incident when he had a relationship break-up, which caused him depression.

In its argument at the punishment hearing, the State argued that the officers were family men serving the public who nearly met death during the incident because appellant was seeking to avoid arrest for robbing a crack house and violating his probationary conditions. The prosecutor also argued the severity of shooting peace officers, and referenced appellant's commission of an armed robbery while he was on probation for an earlier aggravated robbery.

Reiterated, our task is limited to a determination of whether appellant suffered egregious harm from the omission of the reasonable doubt instruction in the punishment hearing charge. In that connection, we note that the testimony about the two most serious extraneous offenses, namely the aggravated robbery offenses, was uncontroverted either by cross-examination or through the tender of direct evidence to the contrary. That testimony was received during the guilt-innocence phase of the trial, at the conclusion of which the jury was given a general "beyond a reasonable doubt" charge. Moreover, the events giving rise to the prosecution were serious. The evidence showed that appellant shot and wounded one of the witnesses and, in the process of attempting his escape, he fired other shots.

Beyond the extraneous offense testimony received during the guilt-innocence phase, the State introduced very little specific evidence during the punishment hearing. The only references to other bad acts occurred during the State's cross-examinations of appellant's

witnesses. Those were inferences that appellant had driven while intoxicated, had unlawfully carried a weapon and failed to report to his probation officer. The gist of the State's argument was that appellant should not be treated lightly because of the seriousness of the offense and his demonstrated lack of ability to conform to proper conduct.

In sum, under this record, the failure to give the reasonable doubt instruction at the punishment hearing was not sufficient to affect the very basis of the case, to deprive appellant of a valuable right, or to vitally affect a defensive theory. That being so, appellant did not suffer egregious harm by the failure to give the extraneous offense reasonable doubt instruction. Accordingly, no reversible error is shown and the judgments of the trial court are affirmed.

John T. Boyd
Senior Justice

Do not publish.