IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. WR-75,134-01






EX PARTE DANA ABDOLAH DAMANEH, Applicant









ON APPLICATION FOR A WRIT OF HABEAS CORPUS

CAUSE NO. W05-00507-W(A) IN THE 363RD DISTRICT COURT

FROM DALLAS COUNTY




 Per curiam. Womack, J., dissented.


ORDER

 We deny relief. The trial judge has recommended that we grant relief. It is unclear
whether the trial judge's recommendation relates to guilt, or to punishment, or to both. This
confusion is inconsequential, however; the applicant has not established that he is entitled
to any relief.

 The trial judge first finds that trial counsel was ineffective for failing to object to the
prosecutor's statement during closing argument that the jury had to first find the applicant
not guilty of aggravated robbery before considering whether the applicant is guilty of the
lesser-included offense of robbery. The trial judge states that the argument "could have
caused the jury not to consider the lesser included offense of robbery." This is not the
standard for ineffective assistance of counsel. A habeas applicant must show deficient
performance and resulting prejudice. (1) The applicant has not shown prejudice. Even if
counsel was deficient for failing to object, the jury charge correctly set out the law (2) and
instructed the jury to disregard any statements made by the attorneys that are not in harmony
with the law as stated in the instructions. In the absence of any evidence to the contrary, we
should presume that the jury followed the written instructions. (3) 

 Next, we disagree with the trial judge's determination about counsel's performance
regarding the State's evidence relating to guns and terrorism presented at punishment. 
Anything relevant to punishment (including a person's suitability for community supervision)
is admissible under Texas Code of Criminal Procedure Article 37.07 Section 3(a)(1). (4) The
applicant used two guns during the commission of this offense. And regarding the other
guns, the evidence at punishment showed that the applicant had a gun in his possession at a
public park, several guns in his possession in a deserted area immediately outside the fence
enclosing the DFW airport, and an array of guns in the trunk of his car at the time of the
offense. All of these incidents occurred outside the presence of his father, who claimed sole
ownership of the extensive gun collection, which included assault weapons. Most of the
weapons were discovered in the applicant's parents' house. At the time of the offense, the
applicant's parents were in Iran, and the applicant had sole possession of the house. As a
whole, the evidence showed that the applicant had unlimited access to his father's weapons
cache and was discovered alone with guns in suspect places on at least two occasions. There
is nothing objectionable about this evidence in light of the applicant's history regarding the
use, possession, and display of guns. 

 Likewise, the applicant's complaint about the evidence and argument concerning
terrorism, which implied that the applicant was involved in terrorism, was relevant at
punishment. While executing the search warrant at the applicant's home, along with the
weapons cache, law enforcement discovered OC (oleoresin capsicum) pepper grenades, a
tactical vest, and a stun gun. Significantly, the officers also discovered a manila envelope
containing internet printouts of terrorist organizations. A document about the attacks of
September 11th stated: 

 Our own evil government bears the ultimate responsibility for this disaster, no
matter who actually carried it out. If the homicidal psychopaths of the United
States military slash government didn't have the nasty habit of mass murdering
civilian men, women, and children around the world there wouldn't be
anybody who wanted revenge. 

 But if foreign terrorists were involved in these September 11th attacks,
they would have been the best friends of [sic] the U.S. Government ever had. 
The U.S. Government had everything to gain from this act of barbarism against
the American people. In fact, emerging evidence makes it certain that the
ruling elite with in the U.S. military slash government actualy sponsored the
September 11th attacks. 


Another document explained how to make a pipe bomb. Law enforcement also discovered
a hollow grenade in a briefcase in the trunk of the applicant's car. Finally, when ATF Agent
Patterson was brought in to investigate the applicant due to the number and type of weapons
discovered, the applicant gave him permission to search a separate commercial storage unit
that he kept. The unit contained PVC pipe with a cap on each end. When Agent Patterson
went to pick up the pipe, the applicant stated that it contained rocks and gravel. Agent
Patterson also discovered rifle powder, ten empty CO2 cartridges, and household chemicals.
Agent Patterson became concerned that the applicant was going to use these materials to
make an explosive device. Despite this concern, Agent Patterson explained that the applicant
could not be charged with any violation because there was no fusing mechanism.

 Further, FBI Agent Stevens's testimony was also admissible. (5) He testified that he was
familiar with the applicant and that, in his opinion, the applicant is not a peaceful, law-abiding citizen. 

 Even if the cumulative effect of this evidence led the jury to believe that the applicant
"was a 'One-man Army' bent on blowing up buildings and shooting down airliners," as the
trial judge has found, we cannot find counsel ineffective. The evidence supporting this
argument was relevant for purposes of punishment and its probative value was not
substantially outweighed by any unfair prejudice. 

 Next, the trial judge has determined that counsel's failure to present any mitigation
concerning the applicant's mental health at punishment "left the jury with an incomplete and
misleading picture of Applicant's character and role in the offense." While this may be the
case, we cannot conclude that the applicant was prejudiced. With respect to non-capital
sentencing, the jury's punishment assessment is normative, not fact-bound. (6) The mental-health mitigation evidence presented to us could have been a double-edged sword and
therefore could have left the jury with a more damning impression of the applicant, especially
in light of the other punishment evidence. The applicant has been diagnosed by Dr. Pittman
as having a mood and personality disorder. He also suffers from paranoia, schizophrenia,
delusional disorder, and depression disorder. The trial court found that these issues
"significantly impair his social and occupational functions as well as his judgment and his
inability to function independently." Given the applicant's history with weapons, the jury
could have reasonably determined that his mental infirmities, which Dr. Pittman determined
were directly related to his participation in this offense, make him a very significant future
danger.

 Further, the applicant was not sentenced to the maximum punishment of ninety-nine
years for this offense; he was given forty years, which is the middle range of punishment
applicable to the offense of aggravated robbery. As a result, given the entirely speculative
nature involved in non-capital sentencing, we cannot conclude that the applicant was
prejudiced by counsel's failure to present this evidence at punishment. 

 Lastly, the trial judge concludes that counsel was ineffective for failing to object to
the prosecutor's improper argument about parole during closing argument. We disagree. 
Even if counsel was deficient for failing to object, the court's punishment charge properly
set out the instructions concerning parole in accordance with Texas Code of Criminal
Procedure Article 37.07, Section 4(b). Again, we should presume that the jury followed the
instructions provided. (7) 

 We deny relief. 


DATE FILED: September 14, 2011

DO NOT PUBLISH
1. Strickland v. Washington, 466 U.S. 668, 687-93 (1984).
2. See Barrios v. State, 283 S.W.3d 348, 349-53 (Tex. Crim. App. 2009).
3. Hutch v. State, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996).
4. See Sims v. State, 273 S.W.3d 291, 295 (Tex. Crim. App. 2008).
5. See id. at 296.
6. Barrow v. State, 207 S.W.3d 377, 379-80 (Tex. Crim. App. 2006). 
7. Hutch, 922 S.W.2d at 170.