Opinion issued December 8, 2011.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-01087-CR

———————————

Tramine Vashun Barrett, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 248th Judicial District Court 

Harris County, Texas



Trial Court Case No. 1255536

 



 

MEMORANDUM OPINION

          A
jury found appellant, Tramine Vashun
Barrett, guilty of the offense of possession with the intent to deliver cocaine
weighing more than four grams but less than two hundred grams,[1] and the trial court
assessed his punishment at confinement for thirty-five years.  In his sole point of error, appellant
contends that the trial court fundamentally erred in submitting a supplemental
instruction to the jury. 

          We
affirm.

Background

          Houston
Police Department (“HPD”) Officer J. Mabasa testified
that on March 16, 2010, he was assigned to work with HPD Officer N. Ashraf in
an undercover narcotics investigation. 
Ashraf was to engage in an undercover narcotics sale while Mabasa, as a “take down officer,” was to follow and then
detain a suspect after a sale.  Pursuant
to the plan, Mabasa parked his patrol car one block
away from a bar where a sale was to take place. 
He then received an instruction to follow a “suspect” car, for which Ashraf
had provided a description.  Mabasa saw the suspect car change lanes without giving a
signal.  After he initiated a traffic
stop, Mabasa saw that appellant was the driver of the
car and he had in his possession an open container of alcohol and “a scale with
what appeared to be cocaine residue.” 
After he arrested appellant, Mabasa spoke to
Melissa Terry, who was a passenger in the car and “appeared to be intoxicated.”
 She informed Mabasa
that appellant had hidden “more cocaine or narcotics” in the car.  Ashraf and other uniformed officers then
joined Mabasa to conduct a more comprehensive search
of the car.  Inside the “cavity
underneath the center console,” the officers found a bag containing “marijuana[,] . . . powdered cocaine, crack cocaine and a
Smith and Wesson pistol.”  A narcotics
detection dog also gave a “positive alert” for cocaine residue on money found
in appellant’s possession.

          Officer
Ashraf testified that he received a tip from a confidential informant that
Terry was “selling a lot of narcotics,” and the informant provided Ashraf with
Terry’s cellular telephone number. 
Ashraf called the number and arranged to meet Terry at the bar to trade
400 pills of Xanax and $200 for crack and powder cocaine.  Although Terry claimed to be coming alone, she
arrived in the car driven by appellant. 
She called Ashraf “three [or] four times” while appellant left the car,
stood in the front of the bar, “looked around,” went inside the bar for
“approximately 30 seconds,” and then returned to the car with Terry and left
the bar parking lot.  Ashraf then
instructed Officer Mabasa to follow the car and
initiate a traffic stop if he saw the driver commit a traffic violation.  After Mabasa
reported later that he “did find some narcotics . . . in plain view,” Ashraf
joined Mabasa in searching the car, where the
officers found more narcotics and the firearm underneath the center console.  Ashraf checked a computer database and
learned that appellant was one of two owners of the car.  Appellant admitted to Ashraf that he owned
the firearm and “some” of the narcotics in the car, and he explained that Terry
had instructed him to “meet a white boy [with] 400 Xanax pills on him, beat his
ass and take his shit.”  

Officer Ashraf then field tested
the narcotics, which consisted of nine Xanax pills, 4.5 grams of powder
cocaine, and 6.1 grams of crack cocaine. 
He also found several empty bags containing cocaine residue.  Ashraf explained that the digital scale,
amount of narcotics, and individual bags with cocaine residue indicated that
there was the intent to sell the narcotics. 
On cross-examination, Ashraf admitted that Terry was the original target
of the investigation.

          Appellant
testified that he was dating Terry and knew “through word of mouth” that she
was “involved in narcotics,” but he “didn’t know how serious it was.”  He explained that he had no knowledge of the
narcotics or the firearm found in the car but thought that he was “taking
[Terry] to meet someone” at the bar for a “drug deal.”  When Terry could not make contact with the
person that she was supposed to meet, they decided to leave the bar.  They were then stopped by Officer Mabasa and detained. 
Appellant explained that the officers must have “pulled [the] scale out
of [Terry’s] purse.”  

          During
its deliberations, the jury sent the trial court a question asking, “Does
‘intent to deliver’ mean only on the 16th or the facts that he had the items
necessary for deliver?”  The trial court
responded, “Refer to the charge.  The
charge is for Possession with intent to deliver.  The on or about date refers to possession, if
any, of controlled substance.  Continue
to deliberate.”  Appellant did not object
to the instruction, and the jury returned a verdict of guilty shortly
thereafter.

Jury Instruction

          In his
sole point of error, appellant argues that the trial court erred in issuing its
supplemental instruction because it “failed to instruct the jury that the . . .
date of March 16 . . . refers not just to possession but possession with intent
to deliver.”   Appellant asserts that the
instruction “allowed the jury to return a guilty verdict without having been
required to have found that appellant had the intent to deliver on March 16.”  As a result, the trial court’s supplemental
instruction caused appellant “egregious harm.”

          A
trial court must instruct a jury by “a written charge distinctly setting forth
the law applicable to the case.”  Tex. Code Crim. Proc. Ann. art.
36.14 (Vernon 2007).  When reviewing alleged errors in a trial
court’s charge, we must first determine whether error actually exists in the
charge, and, if error does exist, we must determine whether sufficient harm
resulted from the error to require reversal.  Abdnor v. State, 871 S.W.2d 726, 731–32 (Tex. Crim. App. 1994).           

Here, the indictment
alleged that appellant, “on or about March 16, 2010, did then and there
unlawfully, knowingly possess with intent to deliver a controlled
substance.”  Thus, the State was required
to prove that on March 16, appellant had the culpable mental state of “intent
to deliver.”  However, the trial court,
in its supplemental instruction, stated that the “on or about date” referred to
possession of a controlled substance, without mentioning the intent to deliver.[2]  To the extent that the trial court’s supplemental
instruction implied that the “on or about date” referred only to possession of
a controlled substance but not the intent to deliver it, the instruction was erroneous.

          When,
as here, a defendant fails to object or states that he has no objection to a
charge, an error in the charge does not require reversal unless the record
shows  “egregious harm” to the defendant.  Id. at 731–32; see also Tex. Code Crim. Proc. Ann. art.
36.19 (Vernon 2006); Bluitt
v. State,
137 S.W.3d 51, 53 (Tex. Crim. App. 2004); Almanza v. State, 686 S.W.2d
157, 171 (Tex. Crim. App. 1984).  Egregious
harm exists when the record shows that a defendant has suffered actual, rather
than merely theoretical, harm from jury-charge error.  Almanza, 686 S.W.2d at 174.
 Egregious harm consists of error
affecting the very basis of the case or depriving the defendant of a valuable
right, vitally affecting a defensive theory, or making the case for conviction
or punishment clearly and significantly more persuasive.  Saunders v. State, 817 S.W.2d
688, 692 (Tex. Crim. App. 1991); Martinez v. State, 190 S.W.3d
254, 259 (Tex. App.—Houston [1st Dist.] 2006, pet. ref’d).  To determine whether a defendant has sustained
harm from a non-objected-to instruction, we consider (1) the entire charge, (2)
the state of the evidence, (3) arguments from counsel, and (4) any other
relevant information.  Hutch
v. State,
922 S.W.2d 166, 171 (Tex. Crim. App. 1996).

          Here,
the trial court’s supplemental instruction referred back to its written charge,
which authorized the jury to find whether appellant, “on or about the 16th day
of March . . . did then and there unlawfully, knowingly possess with intent to
deliver a controlled substance.” 
Alternatively, the charge authorized the jury to find appellant guilty
if he, “on or about the 16th day of March, . . . with the intent to promote or
assist the commission of the offense[,] . . . solicited, encouraged, directed,
aided or attempted to aid Melissa Terry to commit the offense.”  The supplemental instruction also reiterated
that appellant stood accused of “possession with the intent to deliver” a
controlled substance.  Thus, although the
supplemental instruction may not have clearly stated that to be guilty,
appellant had to have the intent to deliver the narcotics, it did refer the
jury back to the written charge, which accurately stated the elements of the
offense and the requirement that they occurred “on or about” March 16.  The first Almanza factor therefore weighs
against a finding of egregious harm.  See Hutch, 922 S.W.2d at 171; Dougherty v. State, No. 01-03-01064-CR,
2007 WL 1633275, at *4 (Tex. App.—Houston [1st Dist.] June 7,
2007, no pet.) (mem.
op.) (holding first Almanza factor to weigh against
finding of egregious harm when application paragraph correctly instructed jury
on applicable law even though jury charge contained inaccurate definition for
requisite mental state).

          At
trial, appellant asserted that he did not know the narcotics were in the car
and that they belonged to Terry. 
Appellant did not assert that he possessed the narcotics only as a user
with no intent to deliver, nor did he assert that on March 16 he had no intent
to deliver the narcotics.  The evidence
at trial consisted solely of the aborted transaction with Ashraf, the traffic
stop and subsequent search of appellant’s car, and the inventory of what was
found in the car.  Appellant admitted
that he had driven Terry to the bar with knowledge that she was engaging in a
“drug deal,” which itself would satisfy the law of parties as instructed in the
written charge.  Furthermore, in his
closing argument, appellant asserted that he had not committed a traffic
violation, there was no video evidence of the search of his car, and the officers
did not have probable cause to search his car. 
At no point during trial or closing arguments did appellant raise a
theory that on March 16 he lacked the intent to deliver the narcotics.  Therefore, the second and third Almanza factors
also weigh against a finding of egregious harm. 
See Hutch, 922 S.W.2d at 171; Gonzales v. State, No. 05-08-00514-CR,
2010 WL 1645062 (Tex. App.—Dallas Apr. 26, 2010, no pet.) (explaining that,
where application paragraph inaccurately authorized the jury to find defendant
guilty of possession with intent to deliver under law of mere possession,
second factor weighed against finding of egregious harm where, at trial, there
was no evidence presented or arguments made that defendant possessed controlled
substance but lacked intent to deliver).

          Therefore,
even if the trial court erred in submitting its supplemental instruction to the
jury, we cannot conclude that appellant suffered egregious harm as a result.   See Almanza, 686 S.W.2d at 171.

          We
overrule appellant’s sole point of error.

Conclusion

          We
affirm the judgment of the trial court.  

 

 

                                                                      Terry
Jennings

                                                                      Justice


 

Panel
consists of Justices Jennings, Sharp, and Brown.

Do
not publish.  Tex. R. App. P. 47.2(b).











[1]         See
Tex. Health & Safety Code Ann.
§§ 481.002(5),
481.102(D), 481.112(a), (d) (Vernon 2010).

 





[2]
        Although the State had to prove
that on March 16, 2010, appellant intentionally or knowingly possessed the
controlled substance with the intent to deliver it, the State did not have to
prove that appellant intended to deliver the controlled substance on any
particular date but only at “some point in the future.”  See, e.g., Denton v. State, No. 01-94-01295-CR, 1996 WL 37811, at
*2 (Tex. App.—Houston
[1st Dist.] Jan. 29, 1996, pet. ref’d) (not
designated for publication) (holding that, where indictment tracked statutory
language for possession of controlled substance, “[n]othing
within the indictment or the charge indicated that the State was required to
prove . . . that appellant intended to deliver the controlled substance on any
particular date”).