IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-1522-11







JAMES HENRY GELINAS, Appellant


v.


THE STATE OF TEXAS






ON STATE'S PETITION FOR DISCRETIONARY REVIEW

FROM THE EIGHTH COURT OF APPEALS

EL PASO COUNTY




 Price, J., filed a dissenting opinion.


DISSENTING OPINION


 The court of appeals did not regard the plurality opinion in Hutch to be of binding
precedential value, (1) but nevertheless found it to be persuasive authority and opted to follow
it. (2) I also find at least aspects of the plurality opinion in Hutch to be persuasive, and for
reasons which I elaborate upon in this opinion, I agree with the court of appeals that the
appellant suffered egregious harm in this case. Therefore, I respectfully dissent.

THE ALMANZA STANDARD

 To the extent that Hutch simply reiterated basic propositions established by Almanza
v. State, (3) deriving from its exegesis of Article 36.19 of the Texas Code of Criminal
Procedure, (4) I presume that it remains intact notwithstanding the plurality's disavowal today. 
I think it is still safe to say, for example, as the Court has done in, e.g., Stuhler v. State, (5) that

 [j]ury-charge error is egregiously harmful if it affects the very basis of the
case, deprives the defendant of a valuable right, or vitally affects a defensive
theory. In examining the record to determine whether jury-charge error is
egregious, the reviewing court should consider the entirety of the jury charge
itself, the evidence, including the contested issues and weight of the probative
evidence, the arguments of counsel, and any other relevant information
revealed by the record of the trial as a whole. (6)


Relying upon this standard, with or without the glosses added by the plurality opinion in
Hutch, and unlike the plurality today, I conclude that the jury-charge error in this case
egregiously harmed the appellant.


APPLICATION OF THE ALMANZA STANDARD

The Entirety of the Jury Charge

 The application paragraph with respect to the Article 38.23(a) instruction in this case, (7)
we all agree, instructed the jury to discount Officer Marquez's testimony under exactly the
opposite circumstances than the law requires. It instructed the jury that the appellant's initial
stop would be "illegal," such that it must "disregard" Marquez's testimony, in the event that
it should find "that his vehicle failed to comply with the Texas Transportation Code
Provision, which requires a white light to illuminate the vehicle's license plate[.]" (8) But, of
course, because a white light is exactly what the law does require, Marquez's stop of the
appellant for failing to display a white light would have been quite legal, and in that event,
the jury would not be properly instructed under Article 38.23(a) to disregard evidence
stemming from the stop.

 Without Marquez's testimony, and the videotape that was made from his squad car
pursuant to his roadside detention of the appellant, the State's evidence in this case would
not have rationally supported the appellant's conviction for driving while intoxicated. But
convict him the jury did. The jurors could have reached this verdict by one of only two
possible paths, consistent with the erroneous application paragraph. First, they could have
1) recognized the mistake in the jury charge and self-corrected it (reading "complied" for
"failed to comply"), 2) found that the appellant's license-plate light was not in fact white, and
then 3) convicted him based upon the evidence Marquez supplied, notwithstanding the plain
(if erroneous) language of the jury instruction that they should disregard his testimony. This
is the plurality's preferred hypothesis. Second, they could have 1) followed the erroneous
instruction to the letter, 2) found that the appellant's license-plate light was in fact white (and
therefore legal), and 3) for that reason convicted the appellant based upon the evidence
Marquez supplied, in keeping with the literal dictates of the erroneous instruction (but
contrary to what Article 38.23(a) actually requires). We have no way of knowing which path
the jury took to convict the appellant.

 One thing we do know for certain, however, is that pursuing the first path would have
presented the jury with a difficult ethical dilemma. The record shows that the jury was duly
sworn, and though the content of that oath does not appear in the record, we may safely
assume it was the statutory oath to render a true verdict "according to the law and the
evidence[.]" (9) The jurors were explicitly instructed, moreover, albeit in a boilerplate provision
of the jury charge, that they "are the exclusive judges of the facts proved, of the credibility
of the witnesses and weight to be given their testimony, but the law of the case you will
receive from the Court which is given you herein and you are to be governed thereby." 
There is a general presumption on appeal that jurors "have understood and followed the
court's charge absent evidence to the contrary." (10) Entertaining this presumption, I would
have expected that jurors who understood the application paragraph as literally composed,
but who actually suspected that it was legally inaccurate, to have experienced a certain
degree of angst with respect to their collective ability to follow their oath, given the
unequivocal instruction to take the law (however inaccurate) from the court and be governed
thereby. A jury note, perhaps? Here, there was none. That leads me to prefer the hypothesis
that the jury followed the second path above, finding (as it could readily have done on the
facts of this case) that the appellant's license-plate light was in fact white (such that he did
not "fail to comply with" the Transportation Code), and to have inappropriately considered
Marquez's testimony anyway (as they were required to do per the erroneous instruction) and
therefore convicted him. 

 The plurality today obviously believes otherwise, placing great faith in the power of
the abstract portion of the Article 38.23(a) instruction to alert the jury to the mistake in the
application portion. But nothing in the language of the abstract portion serves necessarily
to signal an inaccuracy in the application paragraph. True, the abstract instruction correctly
informs the jury that illegally obtained evidence is inadmissible. (11) That, in combination with
the language in the application paragraph that expressly tells the jury that the Transportation
Code requires a white light to illuminate the license plate, could conceivably have caused the
jury to question the accuracy of the application paragraph's characterization of a failure to
display a white light as a circumstance that would render the stop "illegal." Far more likely,
it simply caused juror confusion and consternation. In any event, even if it did alert the jury
to the mistake, that would only have entangled the jury in the ethical dilemma I have
described above. (12) It would not have clearly instructed the jury how to resolve it.

The Evidence

 During voir dire, counsel for the appellant made it clear that the credibility of the
arresting police officer would be an issue in the case. He revisited that theme during his
opening statement at the beginning of the guilt phase of trial. In his direct testimony,
Marquez maintained that appellant's license-plate light was "the wrong color." He
acknowledged on cross-examination that he failed to note this fact in his offense report. He
testified that the license-plate light was red rather than white, and he did not remember his
earlier testimony from an administrative license revocation hearing at which he apparently
could not say what color the light actually was--only that it was "somewhat of a color other
than white" but nevertheless "faint-colored." He even acknowledged at one point on cross-examination that he simply "couldn't tell if it was white." The appellant's wife later testified,
however, that the light illuminating the license plate was white, not red, and that the car had
passed its official state inspection every year for the four or five years that they had owned
the truck. (13) While the appellant also contested the efficacy of the State's evidence to show
that he was intoxicated, the most vigorously contested and clearly dispositive issue in the
case was whether Marquez was telling the truth to say that the license-plate light was "the
wrong color." A properly instructed jury might well have resolved the Article 38.23(a) issue
in the appellant's favor and, discounting Marquez's testimony, acquitted him. (14)

The Arguments of the Parties

 At every relevant point during their opening statements, as well as in their final
arguments to the jury, lawyers for the parties argued the facts with respect to the issue of the
color of the license-plate light as if the jury were properly instructed. For all the jurors could
tell from the debate of the parties respecting Marquez's credibility, the appellant preferred
them to find that the light was white, while the State urged them to find that it was not. This
is another factor that contributes to the plurality's impression that the jury must necessarily
have suspected that the Article 38.23(a) application paragraph was flawed--indeed, so
obviously flawed that the jury must have known what the trial court had meant to say.

 But when it came to their iterations of the law, the parties unequivocally endorsed the
Article 38.23(a) jury instruction as it literally, but mistakenly, read. (15) At the beginning of
trial, describing how they could expect the trial to proceed, the trial court had informed the
jurors that the parties would have a chance to examine the jury charge "to consider any
changes that they feel need to be made to those instructions." Later, during their respective
final arguments, both the prosecutor and trial counsel for the appellant recited the Article
38.23(a) application paragraph aloud--verbatim, without correction. (16) The prosecutor
ultimately assured the jurors, specifically with respect to the Article 38.23(a) instructions,
that, "while they're a little bit convoluted, it says exactly what it should say." (17) This
argument would have echoed the trial court's boilerplate jury instruction that "the law of the
case you will receive from the Court which is given you herein and you are to be governed
thereby." The jurors had every reason to assume that the Article 38.23(a) instruction indeed
said "exactly what it should say." The proposition that they nevertheless had the wherewithal
(although the plurality calls it "common sense," it might just as plausibly be characterized
as fortuitous jury nullification--not common at all, and contrary to our ordinary appellate
presumption) to recognize the flaw, know how to correct it, and apply it properly to the facts
of this case as thus corrected, strikes me as doubtful at best.CONCLUSION

 It seems quite evident from a straightforward application of the Almanza factors to the
particulars of this case that the error in the Article 38.23(a) jury instruction affected the very
basis of the case, deprived the appellant of a valuable right, and vitally affected his defensive
theory--take your pick. In short, the appellant was indeed deprived of "a fair and impartial
trial." (18) I would affirm the judgment of the court of appeals. Because the Court today does
not, I respectfully dissent.


FILED: May 15, 2013

PUBLISH
1. Hutch v. State, 922 S.W.2d 166 (Tex. Crim. App. 1996) (plurality opinion).
2. See Gelinas v. State, 2011 WL 2420858, at *5 (No. 08-09-00246-CR, Tex. App.--El Paso,
delivered June 15, 2011) (not designated for publication) ("The State suggests that because Hutch is
a plurality opinion, we need not follow it. That is certainly true. But because we agree with the Hutch
majority, we choose to follow it.").
3. Almanza v. State, 686 S.W.2d 157 (Tex. Crim. App. 1985) (opinion on reh'g).
4. Tex. Code Crim. Proc. art. 36.19.
5. 218 S.W.3d 706 (Tex. Crim. App. 2007).
6. Id. at 719 (footnotes omitted).
7. See Tex. Code Crim. Proc. art. 38.23(a) ("No evidence obtained by an officer . . . [illegally]
shall be admitted in evidence against the accused on the trial of any criminal case. In any case where
the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a
reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and
in such event, the jury shall disregard any such evidence so obtained.").
8. All emphasis is supplied unless otherwise indicated. As if to ameliorate its impact, the State
characterizes this error in the application paragraph as merely "grammatical." State's Brief at 10. The
plurality today similarly wishes to characterize it as no more than "typographical." Plurality Opinion
at 13. Of course, it is neither grammatical (the sentence is perfectly grammatical) nor what I would
regard as "typographical." The error is in the concept expressed, not in the way it is expressed or how
it is rendered on the page.
9. Tex. Code Crim. Proc. art. 35.22.
10. Hutch, supra, at 172.
11. Well, at least the written instruction does. The court reporter's record reflects that what the
trial court read aloud to the jury was that no evidence obtained "as a result of an [sic] lawful stop"
would be admissible against the appellant, though the written instruction said "unlawful." Thus, as
it was read aloud, the abstract Article 38.23(a) instruction was fully consistent with the erroneous
application paragraph and would not have served to alert the jury to the problem. The State has not
shown that this represents an incorrect transcription, and so we have no occasion to doubt it. 
12. The ethical dilemma confronting the jury in this case is reminiscent of that in Penry v.
Johnson, 532 U.S. 782, at 798-800 (2001). There, the United States Supreme Court, like this Court
in Hutch, invoked the appellate presumption "that jurors follow their instructions." Id. at 799. The
Supreme Court ultimately found the presumption unhelpful in Penry, however, because the
instructions at issue were internally contradictory, and "it would have been both logically and ethically
impossible for a juror to follow both sets of instructions." Id. at 799-800. Here, similarly, the best that
can be said about the Article 38.23(a) jury instruction is that it was hopelessly self-contradictory,
injecting "an element of capriciousness" into the case with respect to the most pivotal issue at the guilt
phase of trial. Id. at 800. Under these circumstances, it is difficult to imagine how the error could not
have "affect[ed] the very basis of the case, deprive[d] the defendant of a valuable right, or vitally
affect[ed] a defensive theory." Stuhler, supra.
13. The plurality today declares that "the testimony at trial suggests that the video fails to
conclusively establish the color of the license plate light." Plurality Opinion at 2. By contrast, the
court of appeals observed unequivocally that "[t]he videotape of the traffic stop depicts a white light
illuminating the license plate." Gelinas, supra, at *2. We do not presently have the video before us
in the record. In any event, from the court of appeals's observation it seems at least evident that the
jury could readily have found the license-plate light to have been white. 
14. The plurality asserts that we should not give undue weight to the fact that the issue was
contested, given that there must be a contested fact issue before an Article 38.23(a) instruction is
required to be submitted to the jury in the first place. Plurality Opinion at 8 &13. Presumably the
plurality is worried that, otherwise, every erroneous Article 38.23(a) instruction will be deemed
egregiously harmful. Id. at 8. But the fact that a certain class of jury-charge errors will thus, almost
by definition, have at least one Almanza factor that tends to favor a finding of egregious harm does not
counsel against giving that factor the same weight as it would have in the context of any other kind of
jury-charge error. In any event, it will not be every case in which the evidence supporting the Article
38.23(a) instruction will be as solid as it is in this case. An Article 38.23(a) instruction must be given
any time the evidence supports it, however minimally. Robinson v. State, 377 S.W.3d 712, 719 (Tex.
Crim. App. 2012). That does not mean that every Article 38.23(a) jury-instruction error causes
egregious harm.
15. The plurality is plainly mistaken to say that "both parties also argued the correct law very
clearly to the jury." Plurality Opinion at 12. What the parties asserted with respect to the law suffered
from the same flaw that the jury instruction did. Their arguments with respect to how the facts of the
case ought to be applied to the law could only have confused any juror who was paying attention.
16. To be fair, the prosecutor did not recite the entire application paragraph to the jury, as can been
seen from Judge Johnson's dissenting opinion. Dissenting Opinion at 4-5. But he read a portion of
it to the jurors verbatim, and invited them approvingly to "read the rest of it" for themselves.
17. The plurality disapproves of Hutch's particular reliance upon the principle that the arguments
of the parties "cannot substitute for instructions by the court." Plurality Opinion at 9-10. Because the
parties here did not argue the law correctly, but instead simply endorsed the incorrect statement of the
law contained in the jury charge, this principle does not apply to this case in any event.
18. Tex. Code Crim. Proc. art. 36.19.