# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00546-CR

**Arthur Zapata Ortega, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 26TH JUDICIAL DISTRICT
NO. 10-1451-K26, THE HONORABLE BILLY RAY STUBBLEFIELD, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Arthur Zapata Ortega of felony driving while intoxicated and, in addition, found that he used or exhibited a deadly weapon during the commission of the offense. *See* Tex. Penal Code Ann. §§ 49.04(a), 49.09(b)(2) (West 2011); Tex. Code Crim. Proc. Ann. art. 42.12, § 3g(a)(2) (West Supp. 2012). The jury assessed appellant's punishment, enhanced pursuant to the habitual offender punishment provision of the penal code, at confinement for 99 years in the Institutional Division of the Texas Department of Criminal Justice. *See* Tex. Penal Code Ann. § 12.42(d) (West Supp. 2012). In a single point of error on appeal, appellant complains of jury-charge error in the punishment charge. Finding no reversible error, we affirm the judgment of the trial court.

In his sole point of error, appellant asserts that the trial court fundamentally erred by giving the jury the wrong parole instruction in the punishment charge. Because the jury returned an

affirmative deadly-weapon finding, the jury should have been charged in accordance with section 4(a) of article 37.07 of the Texas Code of Criminal Procedure, which provides:

> Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-half of the sentence imposed or 30 years, whichever is less, without consideration of any good conduct time he may earn. If the defendant is sentenced to a term of less than four years, he must serve at least two years before he is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.

Tex. Code Crim. Proc. Ann. art. 37.07, § 4(a) (West Supp. 2012). Instead, the jury was charged as follows:

> Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served *plus any good conduct time earned* equals one-half of the sentence imposed or 30 years, whichever is less, without consideration of any good conduct time he may earn. If the defendant is sentenced to a term of less than four years, he must serve at least two years before he is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.

(Emphasis added.) This instruction—erroneously adding the italicized language—is not found in the code of criminal procedure.

Appellant argues that this "confusing" instruction "was extremely detrimental" to him because the parole instruction as a whole "probably" gave the misleading impression to the jury that "good conduct credit would result in appellant becoming eligible for parole in significantly less time than actually permitted by law." The State concedes that the parole eligibility instruction—indicating both that good conduct time would and would not be a factor in determining appellant's eligibility for parole—was erroneous, but argues that appellant was not harmed by the

2

parole instruction. We agree that the parole eligibility instruction given by the trial court was erroneous since it did not comply with article 37.07, § 4(a).

The degree of harm required for reversal for jury-charge error depends on whether the error was preserved in the trial court. If the appellant objected to the charge error at trial, reversal is required if the error "is calculated to injure the rights of the defendant," which has been defined to mean that there is "some harm." *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009) (quoting *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g)). In contrast, if the appellant did not object at trial, the error must be "fundamental," and reversal is required only if the error was so egregious and created such harm that the defendant "has not had a fair and impartial trial." *Id.*

The record reflects, and appellant concedes, that he failed to object to the erroneous parole eligibility instruction at trial. Thus, the error does not call for a reversal of the conviction unless it was so egregiously harmful under the circumstances as to have denied appellant a fair and impartial trial. *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007); *Almanza*, 686 S.W.2d at 171. Any harm that is inflicted by the erroneous charge must be "assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of the probative evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171; *see Ngo v. State*, 175 S.W.3d 738, 750 n.48 (Tex. Crim. App. 2005). The degree of harm demonstrated by the appellant must be actual, not merely theoretical. *Almanza*, 686 S.W.2d at 174. "Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a

3

defensive theory." *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007) (citing *Hutch*

*v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996)).  Egregious harm is a difficult standard to

meet and must be determined on a case-by-case basis.  *See Ellison v. State*, 86 S.W.3d 226, 227

(Tex. Crim. App. 2002); *Hutch*, 922 S.W.2d at 171.

Beginning with the punishment charge itself, we observe that in addition to the

erroneous eligibility instruction, the jury was given the requisite statutory instructions explaining

good conduct time and parole:

> Under the law applicable to this case, the defendant, if sentenced to a term of
> imprisonment, may earn time off the period of incarceration imposed through the
> award of good conduct time.  Prison authorities may award good conduct time to a
> prisoner who exhibits good behavior, diligence in carrying out prison work
> assignments, and attempts at rehabilitation.  If a prisoner engages in misconduct,
> prison authorities may also take away all or part of any good conduct time earned by
> the prisoner.
>
> It is also possible that the length of time for which the defendant will be imprisoned
> might be reduced by the award of parole.

*See* Tex. Code Crim. Proc. Ann. art. 37.07, § 4(a).  The jury was also given instructions that we view

as mitigating or curative in the paragraphs following the instruction with the erroneous language:

> It cannot accurately be predicted how the parole law and good conduct time might
> be applied to this defendant if he is sentenced to a term of imprisonment, because
> the application of these laws will depend on decisions made by prison and
> parole authorities.
>
> You may consider the existence of the parole law and good conduct time.  However,
> you are not to consider the extent to which good conduct time may be awarded to or
> forfeited by this particular defendant.  You are not to consider the manner in which
> the parole law may be applied to this particular defendant.

*See id.*; *Ross v. State*, 133 S.W.3d 618, 624 (Tex. Crim. App. 2004); *see also Igo v. State*, 210 S.W.3d 645, 647 (Tex. Crim. App. 2006).

As a whole, the trial court's parole instructions informed the jury that appellant may be released from a prison sentence early because of good conduct time or parole, but not that he necessarily would, and that one cannot predict how parole law and good conduct time might be applied to appellant. Further, the jury was explicitly instructed that although it could consider, in general, the existence of parole and good conduct time, it could not apply that to appellant specifically. We presume that the jurors understood and followed the court's instructions in the jury charge absent evidence to the contrary. *See Taylor v. State*, 332 S.W.3d 483, 492 (Tex. Crim. App. 2011); *Hutch*, 922 S.W.2d at 172. There is no evidence in the record to rebut the presumption that the jury followed the instruction not to consider how good conduct time or the parole law might be applied to appellant. Nothing in this record suggests that the jury discussed, considered, or tried to apply—contrary to the judge's admonition—what they were told about good conduct time and parole. For example, the jury did not send out any notes or questions expressing confusion about the parole instruction or indicating the possible application of good conduct time or the parole law to appellant.

With respect to the evidence in this case, the record reflects that while driving his Honda Accord in Hutto, Texas, appellant made a wide right turn onto FM 685, crossed the center lane of traffic, and came within less than a foot of hitting a sheriff deputy's patrol car. When the deputy initiated a traffic stop and made contact with appellant, he observed multiple signs of intoxication. Appellant then failed the standardized field sobriety tests administered by the deputy.

5

After being taken into custody, appellant consented to giving a blood sample. Subsequent lab testing established that appellant's blood alcohol concentration was 0.25, more than three times the legal limit of intoxication. *See* Tex. Penal Code Ann. § 49.01(2)(B) (West 2011) (legal threshold for intoxication is alcohol concentration of 0.08). The evidence also revealed that appellant had six prior convictions for driving while intoxicated. In addition, the State presented punishment evidence demonstrating that appellant had seven prior felony convictions, the most recent of which carried 30-year sentences. Appellant was on parole when he committed the instant offense.

Concerning jury argument, the State briefly referenced parole during its closing argument. In particular, when discussing the appropriate sentence for appellant, the prosecutor indicated that "anything above 60, 60 years to life or 99, he's eligible for patrol [sic] after 30 years." He did not mention good conduct time in connection with parole eligibility. Defense counsel also briefly alluded to parole eligibility. In urging the jury to consider the minimum sentence, he argued that if appellant, 48 years old at the time of trial, was sentenced to 25 years, he would "discharge that sentence at 73 years old." Again, no mention of good conduct time affecting parole eligibility was made. In short, while both the prosecutor and defense counsel referenced parole eligibility, neither reference suggested that good conduct time was a consideration in appellant's parole eligibility. Thus, the arguments presented the jury with the correct application of the parole law concerning appellant—that good conduct time was not a consideration in his parol eligibility.

In conclusion, although appellant did receive the maximum sentence available, the factors discussed above militate against a finding of egregious harm. First, the jury charge contained curative or mitigating instructions. The parole instruction explained the possibility, not certainty,

that appellant's prison sentence may be reduced by good conduct time or parole eligibility and, further, clearly admonished the jury not to consider the extent to which the parole law or good conduct time might be applied to appellant. Second, while parole eligibility was briefly referenced during jury argument, good conduct time as a factor of parole eligibility was not mentioned by either party. Further, there is no evidence in the record that the jury attempted to apply the parole laws or good conduct time when assessing appellant's sentence. Finally, the evidence relating to both guilt-innocence and punishment was exceptionally strong. The jury could have viewed appellant's extensive DWI history—demonstrating a repeated disregard for endangering others with his conduct, the circumstances of this DWI offense—including appellant's high level of intoxication and the near-collision with the deputy's car, and appellant's lengthy criminal history—rendering him a "habitual offender"—as factors warranting the maximum sentence.

After reviewing the record and considering all the *Almanza* factors, we conclude appellant was not egregiously harmed by the erroneous parole instruction. We overrule appellant's sole point of error and affirm the judgment of conviction.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Rose and Goodwin

Affirmed

Filed: November 29, 2012

Do Not Publish