**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-17-00488-CR**
_____

**JESSICA LATRESE CHATMAN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause No. 17-03-03868-CR**

**MEMORANDUM OPINION**

A jury convicted appellant Jessica Latrese Chatman of evading arrest or detention with a vehicle and assessed punishment at nine years of confinement and a fine of $2000. In her sole appellate issue, Chatman asserts that she was egregiously harmed because the trial court's charge during guilt-innocence was biased against her affirmative defense of necessity. Specifically, Chatman complains of the trial

court's placement of the instruction on her necessity defense after the application portion of the charge. We affirm the trial court's judgment.

THE EVIDENCE

Officer Justin Reeves of the Willis Police Department testified that on March 24, 2017, he was aware that there was a warrant for Chatman's arrest. While Reeves was on patrol in his marked police vehicle, an off-duty officer called him and reported that Chatman was leaving her residence in her vehicle and was heading southbound on Highway 75. Reeves went toward Chatman's location and located her vehicle. Reeves saw that Chatman's vehicle did not have a license plate mounted on the front, so he decided to stop the vehicle for a traffic violation "to make sure that it was Ms. Chatman driving the vehicle[]" and he turned on his vehicle's lights and siren. Reeves testified that he and Chatman eventually stopped in the WoodForest Bank parking lot. According to Reeves, when he walked up to Chatman's vehicle, he told her that he was an officer with the Willis Police Department, informed her of the reason for the stop, and asked for her insurance and identification. Reeves explained that Chatman told him she was late for an appointment with her dentist. Upon receiving Chatman's license, Reeves returned to his vehicle and asked dispatch to verify that there was a warrant for Chatman's arrest.

2

Reeves explained that he contacted his partner, Officer Kenneth Elmore, as a precaution, and Elmore arrived while Reeves was waiting for a response from dispatch. According to Reeves, dispatch responded that there was a warrant for Chatman's arrest. Reeves testified that he returned to Chatman's vehicle and asked her to step out of the vehicle, but Chatman stated that she was not going to step out and attempted to put her vehicle into drive. Reeves explained that at that point, he attempted to unlock and open Chatman's door, but he did not attempt to grab Chatman and did not have his gun or taser drawn. Reeves again informed Chatman that she needed to step out of the vehicle, and he testified that Chatman drove away as he was against the car attempting to unlock and open her door. According to Reeves, Chatman took off "down the middle of a construction zone[,]" so he knew a high-speed pursuit would ensue.

Reeves testified that he and Elmore approached speeds of 115 miles per hour while attempting to catch Chatman, and he and Elmore followed Chatman for approximately forty-six miles to Houston, and they were "swerving around cars." Reeves described Chatman's driving as "all over" the road. According to Reeves, Chatman sideswiped a vehicle, and in Houston, police spiked her tires, so both tires on the driver's side of her vehicle were deflated, but she tried to continue driving for approximately ten minutes before eventually stopping in a parking lot in Houston.

3

Reeves explained that at that point, multiple agencies were involved in the chase, and they conducted a felony stop with weapons drawn, ordered Chatman to step out of the vehicle, and arrested her. According to Reeves, no one fired a gun or Taser at Chatman, and she was unharmed. Video recordings of the pursuit, arrest, and the interior of Reeves's patrol car were admitted into evidence and published to the jury.

Elmore testified that he encountered Chatman when he came to back up Reeves during the initial stop. Elmore testified that officers prefer that more than one officer be present when detaining someone who has a warrant "just in case things don't go according to plan." According to Elmore, the warrant for Chatman's arrest was for the offense of stalking. When Elmore arrived, he pulled alongside Reeves's patrol car. According to Elmore, he and Reeves approached Chatman's vehicle with the intention of removing her from the vehicle, detaining her, and advising her that there was a warrant for her arrest. Elmore explained that the street they were on was under construction, had been shut down to two lanes, and "there were construction workers out there actively working on the road." Elmore heard Reeves ask Chatman to step out of the vehicle, and saw Reeves reach into the vehicle to try to unlock the door. Chatman then "put it into gear and drove off." Elmore testified that a chase began because Chatman "evaded in a motor vehicle when we were trying to detain

4

her for a warrant." According to Elmore, Chatman sideswiped a car, causing damage to its mirror and side. The State rested after Elmore's testimony.

Chatman testified that she was arrested for stalking the victim, B.H., in 2013, and she pleaded guilty for the offense. Chatman explained that she lived across the street from B.H.'s business for seven years. According to Chatman, she was held for six months in solitary confinement and sent to a mental institution, and she was "tortured in Montgomery County jail." Chatman explained that B.H. has contacted her "pretty much every day[]" since she was released from jail. Chatman testified that B.H. was stalking her.

Chatman explained that one of the reasons she ran from the police is because of the way she was treated while she was in the Montgomery County Jail. Chatman testified that she did not know there was a warrant for her arrest. Chatman explained, "I felt like I had no other choice. First time I got out [of] the car[,] they took me to jail and touched me and stuff and tortured me." During cross-examination, Chatman admitted that she intentionally evaded arrest in a motor vehicle on March 24, 2017, and that the offense began in Montgomery County, Texas. In addition, Chatman admitted that she drove the vehicle in a manner that could cause serious bodily injury. Chatman explained, "I had other options, but I felt like I was backed into a corner, and that's why I d[id] what I did." The defense rested after Chatman's

5

testimony. The State called B.H. in rebuttal, and B.H. testified regarding Chatman's harassment and stalking of B.H. and his wife.

At the charge conference, defense counsel did not object to the placement of the paragraph on Chatman's defense of necessity after the application paragraph. The jury convicted Chatman of evading arrest or detention with a vehicle and assessed punishment at nine years of confinement and a fine of $2000.

CHATMAN'S ISSUE

In her sole appellate issue, Chatman contends that she was egregiously harmed because the trial court's charge during guilt-innocence was biased against her affirmative defense of necessity. Specifically, Chatman complains of the trial court's placement of the instruction on her necessity defense after the application portion of the charge.

When reviewing alleged charge error, we determine whether error existed in the charge and, if so, whether sufficient harm resulted from the error to compel reversal. *Ngo v. State*, 175 S.W.3d 738, 744 (Tex. Crim. App. 2005). If no error occurred, our analysis ends. *See Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). If the defendant does not object to the alleged charge error at trial, we may reverse the judgment only if the error is so egregious that the defendant did not receive a fair and impartial trial. *Almanza v. State*, 686 S.W.2d 157,171 (Tex. Crim.

6

App. 1984) (op. on reh'g); *see also Herron v. State*, 86 S.W.3d 621, 632 (Tex. Crim. App. 2002). In assessing the degree of harm, we must consider the entire jury charge, the state of the evidence, the argument of counsel, and any other relevant information revealed by the record. *Almanza*, 686 S.W.2d at 171. We must examine the charge in its entirety rather than a series of isolated statements. *Holley v. State*, 766 S.W.2d 254, 256 (Tex. Crim. App. 1989); *Iniguez v. State*, 835 S.W.2d 167, 170 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd). "Egregious harm is a difficult standard to prove and such a determination must be done on a case-by-case basis." *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996).

The trial court must instruct the jury on the law applicable to the case. Tex. Code Crim. Proc. Ann. art. 36.14 (West 2007). To prove the offense of evading arrest or detention with a vehicle, the State had to prove that Chatman (1) intentionally fled from a person she knew was a peace officer attempting to lawfully arrest or detain her; and (2) she used a vehicle while she was in flight. Tex. Penal Code Ann. § 38.04 (West 2016). A defendant's conduct is justified if the defendant (1) reasonably believes the conduct is immediately necessary to avoid imminent harm; (2) under ordinary standards of reasonableness, the desirability and urgency of avoiding harm clearly outweigh the harm sought to be prevented by the law proscribing the conduct; and (3) "a legislative purpose to exclude the justification claimed for the conduct

7

does not otherwise plainly appear." Tex. Penal Code Ann. § 9.22 (West 2019). If the issue of a defense is submitted to the jury, the trial court must state in its charge that a reasonable doubt on the issue requires that the defendant be acquitted. *Id*. § 2.03(d) (West 2011). The State has the ultimate burden of persuasion when confronted with a defense. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003). The State must prove its case beyond a reasonable doubt. *Id*.

The trial court's application paragraph provided as follows:

> Now if you find from the evidence beyond a reasonable doubt that on or about March 24, 2017 in Montgomery County, Texas, the defendant, JESSICA LATRESE CHATMAN, did then and there intentionally flee from Justin Reeves, a person the defendant knew was a peace officer who was attempting to lawfully arrest or detain the defendant, and the defendant used a vehicle while the defendant was in flight, you will find the defendant guilty of the offense of Evading Arrest or Detention With A Vehicle as alleged in the indictment.

> Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will find the defendant not guilty.

The trial court's charge placed the paragraph regarding the law of necessity immediately after the application paragraph. The paragraph regarding necessity instructed the jury that

> When a person reasonably believes his or her conduct is immediately necessary to avoid imminent harm and the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law prescribing the conduct, that person's conduct is justified.

8

The necessity paragraph then instructed the jury that if it found and believed from the evidence that Chatman reasonably believed her conduct was immediately necessary to avoid harm, and the desirability and urgency of avoiding harm clearly outweighed,

> according to ordinary standards of reasonableness, the harm sought to be prevented by the law prescribing the conduct, then you should acquit the defendant, or, if you have a reasonable doubt as to whether or not the defendant acted reasonably or the desirability and urgency of avoiding the harm was unreasonable under the circumstances, then you should give the defendant the benefit of that doubt and say by your verdict "Not Guilty."

As discussed above, defense counsel did not object at trial to the placement of the paragraph on Chatman's necessity defense. Therefore, if the charge was erroneous, Chatman must demonstrate that she was egregiously harmed by the placement of the paragraph on necessity after the application paragraph. *See Almanza*, 686 S.W.2d at 171. As previously discussed, we review the jury charge as a whole. *Holley*, 766 S.W.2d at 256; *Iniguez*, 835 S.W.2d at 170. The application paragraph required the jury to consider whether the State had proved Chatman guilty beyond a reasonable doubt and instructed the jury to acquit her if it had a reasonable doubt. The charge then instructed the jury regarding the defense of necessity and instructed the jury to acquit Chatman if Chatman's evidence of necessity raised a reasonable doubt in the jury's mind as to whether she acted reasonably or whether

9

the desirability and urgency of avoiding the harm was unreasonable. Absent evidence to the contrary, we presume that the jury understood and followed the trial court's charge. *Hutch*, 922 S.W.2d at 170. Viewing the charge as a whole, we conclude that the charge is not illogical or confusing and did not misplace the burden of proof. The charge accurately tracked the language of section 2.03(d) of the Penal Code, which requires that reasonable doubt as to the defendant's defense requires acquittal. Tex. Penal Code Ann. § 2.03(d). Accordingly, we conclude that the trial court did not err by placing the paragraph about Chatman's defense of necessity after the application paragraph. Having concluded that the trial court did not err, we need not perform a harm analysis. *See Kirsch*, 357 S.W.3d at 649. We overrule Chatman's sole issue and affirm the trial court's judgment.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on February 13, 2019
Opinion Delivered May 1, 2019
Do Not Publish

Before McKeithen, C.J., Kreger and Horton, JJ.